6910

WALKER, EVANS & COGSWELL v. AYER.

1. WARRANTY OF PERSONAL PROPERTY.—A seller of personal property is held to warrant the articles sold to be of value for the purpose for which it is ordinarily used, and when a machine proves to be absolutely worthless for the purpose for which it was sold, the purchaser is entitled to a rescission of the contract.

2. IBID.—Representations by a seller that a typesetting machine would do certain work in a certain manner, which was necessary for its efficient use in the business in which it was to be used, made to a

purchaser who was ignorant of the mechanism and operation of the machine, amounts to a warranty of the machine, even though the buyer had opportunity to examine the machine, but he had not an equal opportunity with the seller to know the workings of the machine.

MR. CHIEF JUSTICE POPE *dissents.*

Before HYDRICK, J., Florence, November, 1906. Affirmed.

Action by Walker, Evans & Cogswell Co. against Hartwell M. Ayer. From judgment for defendant, plaintiff appeals.

*Messrs. Willcox & Willcox,* for appellants, cite: *General allegations of fraud are insufficient:* 65 S. C., 284; 58 S. C., 56. *Misrepresentations charged do not amount to fraud:* 50 S. C., 400; 1 Rich., 101; 26 S. C., 275; 62 S. C., 42; Bish. on Con., sec. 664; 20 Cyc., 53; 36 Am. R., 199; 43 Ind., 38; 63 Me., 12; 11 N. E., 113; 19 S. E., 787; 11 Am. St. R., 345; 2 Allen, 212; 2 L. R. A., 743; 56 Am. St. R., 196; 19 Am. R., 315; 41 Am. R., 215; 66 Fed., 189; 125 U. S., 247; 59 Am. St. R., 122; 60 Am. St. R., 906; 33 Am. R., 171. *Seller is permitted to puff his wares:* 36 Ill., 109; 7 N. E., 88; 2 Kent Com., 485. *Purchaser must protect himself by investigation:* 8 Ency., 643; 46 S. C., 288; 2 Strob. Eq., 154; 53 S. C., 35; 19 S. E., 187; 21 Fed., 435; 41 Am. R., 215; Pont. Eq. Jur., secs. 892-3; 1 Rich., 106; 13 Wall, 379; 125 U. S., 247; 135 U. S., 609; 142 U. S., 43; 158 U. S., 505; 16 Am. St. R., 137; 56 Am. St. R., 196; 81 Am. Dec., 662; 5 Am. D., 642; 37 Am. D., 404; 109 Fed., 31; 2 N. & McC., 54.

*Messrs. George Galletly, J. W. Ragsdale* and *S. W. G. Shipp,* contra. No argument furnished Reporter.

May 12, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. On 23d September, 1903, Walker, Evans & Cogswell Company made a written contract with

Hartwell M. Ayer to lease to him two Empire typesetting machines, with the provision that the machines should become the property of Ayer upon performance of his promise to pay for them the sum of eight hundred dollars. Two hundred dollars of the purchase money was paid in cash and the remainder was to be paid in quarterly installments of seventy-five dollars, with interest at eight per cent. per annum. On 31st January, 1905, this action was brought for three hundred and seventy-five dollars and interest alleged to be due on the credit portion of the purchase money. The answer thus states the defense relied on: "That at said time the defendant was running and operating a newspaper and printing office in the city of Florence, and the said delivery and contract was entered into by the said parties with reference to said business, and the said property was delivered and the said contract entered into by the said parties to secure the use of said property in setting and distributing type and facilitating and promoting the business of the said office.

"That at all of said time the plaintiff represented that the said property was machinery, and paraphernalia appertaining thereto, in good and sound condition and suitable for the purpose of setting and distributing type and facilitating the same and the work and labor of the said office, and the defendant was induced to receive the said property and sign said contract upon the same.

"The defendant was induced to receive the said property and sign the said contract not only on the aforesaid representations, but upon the special representations made to him by the said plaintiff to the effect: (1) That said machines would set clear proofs with little practice by the operators. (2) That there was no trouble in correcting the galleys. (3) That any person of ordinary intelligence could operate the same. (4) That each machine would do the work of five printers, working by hand. (5) That the distributors were simple and an ordinary boy could attend to them. (6) That they had been in successful operation for years. (7)

That they would not break type.   (8)  That they would pay for themselves in a short time.   (9)  That they were particularly suitable and adapted to a small newspaper and printing office like that of defendant, and the defendant, confiding in the truth of said representations, was induced to receive said property and enter into said contract.

"The defendant alleges that all of said representations, both general and special, were and are wholly false and so known to the plaintiff at the time, and the same were made to mislead and overreach the defendant, and the said property was and is wholly unsuited for the purpose for which it was delivered to the defendant and wholly worthless.

"That the defendant, relying on the said representations and wholly induced by the same, paid to the plaintiff the first payment of two hundred dollars ($200) mentioned in the said agreement, and attempted to use said property in his office for the said purposes, and the defendant, in good faith, attempted to use said property and make the same come up to the said representations made by the plaintiff and perform the work it was represented to do from said date until about the first day of May, 1904, to defendant's great loss and expense, when defendant abandoned his effort in that regard and tendered the property to the plaintiff, and refused to make any further payments thereon, but the plaintiff refused to receive the same.

"That the said property has not since been used, or attempted to be used, by the defendant, but the same was and is subject to the demand of the plaintiff."

The defendant further set up a counterclaim on the same statements as are made in the answer, with the additional allegation: "That the defendant was induced by plaintiff's said false and fraudulent misrepresentations not only to pay to the plaintiff said two hundred dollars, the first payment thereon, but was induced thereby to pay to plaintiff fifty dollars on account of alleged charges for packing said property and to further expend the sum of thirty-five dollars freight charges on said property from the city of Charleston,

from which point the said property was shipped by the plaintiff to the defendant, and to further expend the sum of one hundred dollars for work, labor and material in putting up and putting together the said machines, the same having been by the plaintiff separated into parts to facilitate shipment of the same. That during the said period, when the defendant was making, in good faith, efforts to use and operate said machinery in setting type and performing the work in his office, for which it was sold and falsely represented to do and perform, defendant was put to the further necessary expense of hiring and paying extra hands and help, over and above the cost of performing the same work by hand to the amount of nine hundred and sixty dollars; all of which said sums were induced and caused to be paid by the defendant by the said false and fraudulent representations and acts of the plaintiff, to the damage of the defendant thirteen hundred and forty-five dollars."

The plaintiff replied to the counterclaim denying its material allegations The plaintiff also demurred to all the defenses except the general denial, "on the ground that they fail to state facts sufficient to constitute a defense, in that the alleged false and fraudulent representations, if true as alleged, amounted to nothing more that mere matters of opinion and commendatory expressions as to value, prospects and the like, and fraud cannot be predicated thereupon."

The first exception assigns error in the order of the Circuit Court in overruling the demurrer. Some of the representations alleged in the answer, taken separately, may well be regarded as the mere puffing of his property by a seller, which the purchaser is not justified in relying on; still, after allowing for all this, there remains the allegation that the plaintiff represented as distinct facts that the machines would not break the type, that they were suitable and valuable for setting up type, that the defendant relied on these representations and was induced by them to enter into the contract, and that these representations were

false and fraudulent and the machinery turned out to be wholly worthless. There is no allegation of an express general warranty of the machines, but only of the particular representations above set forth.

The rule in this State is, that the seller, without any express warranty or representation of value, is held to warrant the article sold to be of value for the purpose to which it is ordinarily applied. The allegation here being that there was a complete failure of consideration of the contract by reason of the machines being absolutely worthless, the defendant, under the rule stated, on proof of his allegation, would be entitled to rescission of the contract. *Martin v. Ry. Co.,* 70 S. C., 8. This would be so even in the absence of allegations of express representations of quality and value. The case is, of course, stronger in view of the above mentioned allegation of such representations. The demurrer was, therefore, properly overruled.

The plaintiff next contends the Circuit Judge should have granted his motion to direct a verdict on the ground "that the defendant had totally failed to establish the allegations in reference to false representations." The record certainly shows the defendant introduced evidence of the representations alleged in the answer, his own reliance on them, breaking of the type and worthlessness of the machinery. The plaintiff, however, vigorously presses the point that the evidence showed the defendant had opportunity to examine the machines, that he did examine them while at work in plaintiff's publishing house, and that plaintiff did not give any express warranty. All this would not justify the direction of a verdict for the plaintiff, however, unless the parties dealt with equal means of information. In *Bryce v. Parker,* 11 S. C., 337, 340, the Court says: "It is argued, however, that there was no warranty, nothing but a mere representation, and, therefore, the defendant's counterclaim could not be said to be a cause of action arising on a contract. In 1 Pars. on Cont., 580, it is said, 'any distinct assertion or affirmation of quality made by the owner

during a negotiation for the sale of a chattel, which it may be supposed was intended to cause the sale, and was operative in causing it, will be regarded either as implying or constituting a warranty.' "

Though in this State the rule is more favorable to the seller of real estate than to the seller of personal property, there being no implied warranty of title or quality in the sale of land, yet even in such sales it is said in *Rupart* v. *Dunn,* 1 Rich., 101, 105 : "When the buyer, without adequate means for forming his own judgment, relies upon the representations of the seller, then these representations must be fair and full." And in *Ruberg* v. *Brown,* 50 S. C., 397, 401, 27 S. E., 873, which was also an action to set aside the sale of land, the Court says: "Hence, to entitle one to relief for false representation, the misrepresentation must relate to some material fact, past or existing, concerning the subject of the contract, within the range of knowledge, as distinguished from matters of mere belief or opinion, uncertain or conjectural, upon which reliance has been placed with resulting damage, when the complaining party did not deal upon equal terms and with equal means of information. False expressions of opinion by one possessing special knowledge concerning the subject of the contract, which the other party, ignorant on the subject and with unequal means of information, relies on to his injury, may be actionable for fraud. If a party's situation, with reference to property contracted for, is such that he cannot fairly and reasonably exercise his own judgment in reference thereto, he is not a dealer on equal terms, and has a right to rely on representations of value, by the seller, made to induce the purchase."

Can it be said the evidence shows beyond dispute the parties dealt on equal terms? The machines had been in use in the plaintiff's publishing office for several years, and plaintiff's managers had full knowledge of its condition and effectiveness. The defendant testified he had observed in several places the working of typesetting machines, but had no experience in their use, either personally or in his

business, that such machines are complicated, and that in purchasing this one he did not trust his own knowledge or his examination, but relied on the representations of the plaintiff's manager.    Mr. Cogswell, the managing agent of the plaintiff, himself testified it required an operator of considerable experience to manage the machine.    It seems clear from this evidence that the Court could not adjudge as a legal conclusion that the defendant was on such equal terms with the plaintiff, and had such opportunity to examine the machine as to take the case out of the general rule and relieve the plaintiff from all obligations, if the machine turned out to be worthless.

If the representations which the defendant alleged and testified to, as made, were untrue and were relied on by the defendant; and if the defects would not have become obvious to him by the reasonable use of his opportunity for examination and the machine turned out to be worthless, then the defendant was entitled to rescind the contract.  The fact that untrue representations, if made by Mr. Cogswell, were made in good faith in reliance on the statements of employees of the plaintiff, could not affect the right of the defendant to rescind, for as to him the effect on his right to rescind would be the same as if they had been made with the intention to deceive.    It is true, the machines were known by the defendant to be second-hand, and he had notice from this fact not to expect of them the highest efficiency.    But the plaintiff alleged and offered evidence tending to prove the machines would break the type in operation, and that they could be used only at such loss as to render them practically worthless.    Notice that the machines·were second-hand did not put the defendant on notice not to rely on the representations of the seller that the machines would not break type, and would be of value in the work for which they were to be used.  The principle is thus stated in *Wood* v. *Ashe,* 3 Strob., 64, 71: "The general rule is that a warranty is not implied against defects which are obvious, or of which the purchaser is notified.    But if, by fraud, misrep-

resentation or deceit, the purchaser is misled respecting the character, extent or probable consequences of the defect or disease, of which he has no notice, a warranty is implied."

From these considerations it seems clear, under the law of this State, there was such evidence offered in support of the defense and counterclaim set up by the defendant as to make it proper to submit the case to the jury, and to warrant refusal of a new trial. The testimony of Mr. Cogswell, the manager of plaintiff corporation, was at variance with that of defendant, being to the effect that the machines were of value and gave satisfactory results in the plaintiff's printing house, and that he made no representations beyond giving an opinion as to the merit of the machines, and expressly refused to make any guaranty whatever.

By exceptions to the charge the plaintiff submits the Circuit Judge erred in refusing to charge these requests: "There is no fraud or deceit in a contract between parties capable of contracting, where no fiduciary relation exists, where no facts are concealed."

"To entitle the purchaser to rescission of the contract on the ground of misrepresentation, it must appear that the misrepresentation was so made as that the party may be supposed to have acted on the faith of it, in concluding the contract, without examining or judging for himself."

"Where a party undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser can not afterwards allege that the vendor made misrepresentations."

"Representations, for instance, amounting merely to commendatory expressions, or exaggerated statements as to value, or prospects or the like, as where the seller puffs up the value and quality of his goods, or a man, to induce another to contract with him, holds out flattering prospects of gain, are not regarded as fraudulent."

The record shows the Circuit Judge did charge all these propositions. In giving them to the jury he modified them,

however, in accordance with what we have tried to show is the settled law of this State as to the warranty implied in the sale of personal property, and as to the effect of representation as to quality and value. Authority will be found in other jurisdictions to support the plaintiff's requests without modification. But such decisions rest on the application to sales of personal property of the rule *caveat emptor,* which has long been repudiated in this State.

None of the exceptions raise any question as to the measure of damages in a case of rescission such as this, nor as to whether any part of the damages set up in the counterclaims was remote, nor as to whether the verdict was excessive; and we express no opinion on these points.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE POPE, *dissenting.* The Walker, Evans & Cogswell Company, a corporation under the laws of this State, on the 24th day of October, 1903, let and leased to the defendant, Hartwell M. Ayer, two Empire typesetting machines and other personal property, at the price of eight hundred dollars; of which two hundred dollars was paid in cash, with a credit for the remaining six hundred dollars, payable in installments of seventy-five dollars at the end of each quarter, with interest at eight per cent.

In May, 1904, the defendant notified the plaintiff that he would not pay any further sums of money and would turn over the machines as their property because such machines were not satisfactory. The parties being thus at arm's length, an action was brought on January 31, 1905, by the plaintiff, Walker, Evans & Cogswell Company, to enforce the payment by the defendant of said sum of money then due.

To this action the defendant set up four defenses.

For a first defense:

1. "Denies each and every allegation in the said complaint contained.

For a second defense:

I. "That on or about the date mentioned in the second paragraph of the complaint, or shortly thereafter, the defendant delivered to the plaintiff the personal property described in the complaint, and on or about said date they entered into an agreement with reference thereto, a copy of which is hereto attached, marked 'A,' and made a part of this answer.

II. "That at said times the defendant was running and operating a newspaper and printing office in the city of Florence, and the said delivery and contract was entered into by the said parties with reference to said business, and the said property was delivered and contract entered into by the said parties to secure the use of said property in setting and distributing type and facilitating and promoting the business of the said office.

III. "That at all of said times, the plaintiff represented that the said property was machinery and paraphernalia appertaining thereto, in good and sound condition and suitable for the purpose of setting and distributing type and facilitating the same and the work and labor in the said office, and the defendant was induced to receive said property and sign said contract upon the same.

IV. "The defendant was induced to receive the said property and sign said contract, not only on the aforesaid representations, but upon the special representations made to him by the plaintiff to the effect: (1) That said machines would set clear proof with little practice by the operators. (2) That there was no trouble in correcting the galleys. (3) That any person of ordinary intelligence could operate the same. (4) That each machine would do the work of five printers, working by hand. (5) That the distributors were simple and an ordinary boy could attend to them. (6) That they had been in successful operation for years. (7) That they would not break type. (8) That they would pay for themselves in a short time. (9) That they were particularly suited and adapted to a small newspaper and printing

office like that of the defendant, and the defendant, confiding
in the truth of said representations, was induced to receive
said property and enter into said contract.

V. "The defendant alleges that all of said representations,
both general and special, were and are wholly false and so
known to the plaintiff at the time, and the same were made
to mislead and overreach the defendant, and the said prop-
erty was and is wholly unsuited for the purpose for which
is was delivered to the defendant and wholly worthless.

VI. "That the defendant, relying on said representations
and wholly induced by the same, paid to the plaintiff the first
payment of two hundred dollars ($200) mentioned in
said agreement, and attempted to use said property in his
said office for the said purposes, and the defendant, in good
faith, attempted to use said property and make the same
come up to the said representations made by the plaintiff
and to perform the work it was represented to do, from the
said date until about the first day of May, 1904, to defend-
ant's great loss and expense, when defendant abandoned his
efforts in that regard and tendered the said property to the
plaintiff, and refused to make any further payments thereon,
but the plaintiff refused to receive the same.

VII. "That the said property has not since been used, or
attempted to be used by the defendant, but the same was and
is subject to the order or demand of the plaintiff.

VIII. "The defendant denies each and every allegation of
the complaint except as herein admitted."

For a third defense:

I. "That on September 4, 1903, the plaintiff sold to the
defendant the property described in the complaint for the
consideration of eight hundred dollars, to be paid it by the
defendant, and shortly thereafter the plaintiff delivered said
property to the defendant, and on or about the 23d of Octo-
ber, 1903, the defendant, for the purpose of securing said
purchase money, executed and delivered to the plaintiff the
contract hereto attached, marked 'A,' and made a part of
this answer."

The allegations of paragraphs II, III, IV, V, VI, VII, and VIII are the same as in the second defense.

For a fourth defense, and by way of counterclaim, the defendant alleges:

I. "That at all times herein mentioned the plaintiff, Walker, Evans & Cogswell Company, was, and is, a corporation under the laws of this State.

II. "That on September 4, 1903, the plaintiff sold to the defendant the property described in the complaint for the consideration of eight hundred dollars, to be paid it by the defendant, and shortly thereafter the plaintiff delivered said property to the defendant, and on or about the 23d of October, 1903, the defendant, for the purpose of securing the said purchase money, executed and delivered to the plaintiff the contract hereto attached, marked 'A,' and made a part of this answer."

The allegations in paragraphs III, IV, V, VI, VII and VIII in this defense are the same as the allegations in paragraphs II, III, IV, V, VI and VII in the second defense.

IX. "That the defendant was induced by plaintiff's said false and fraudulent misrepresentations, not only to pay to the plaintiff said two hundred dollars, the first payment thereon, but was induced thereby to pay plaintiff fifty dollars on account of alleged charges for packing said property, and to further expend the sum of thirty-five dollars freight charges on said property from the city of Charleston, from which point the said property was shipped by the plaintiff to the defendant, and to further expend the sum of one hundred dollars for work, labor and material in putting up and putting together the said machines, the same having been by the plaintiff separated into parts to facilitate shipment of the same. That during the said period, when the defendant was making, in good faith, efforts to use and operate said machinery in setting type and performing the work in his office, which it was sold and falsely represented to do and perform, defendant was put to the further necessary expense of hiring and paying extra hands and help, over and above

the cost of performing the same work by hand, to the amount of nine hundred and sixty dollars; all of which said sums were induced and caused to be paid by the defendant by the said false and fraudulent representations and acts of the plaintiff, to the damage of the defendant thirteen hundred and forty-five dollars.

X. "Denies each and every allegation of the complaint except as herein admitted.

"Wherefore the defendant demands judgment.

I. "That the complaint be dismissed.

II. "Judgment against the plaintiff on his counterclaim for the sum of thirteen hundred and forty-five dollars."

Thereupon plaintiff demurred to the second, third and fourth defenses on the ground that they failed to state facts sufficient to constitute a defense, in that the alleged false and fraudulent representations, if true as alleged, amounted to nothing more than mere matters of opinion and commendatory expressions as to value, prospects and the like, and fraud can not be predicated thereon.

The case came on for trial at the November, 1906, term of Court of Common Pleas for Florence County.

Upon hearing the demurrer and the answer, the same was overruled. Both sides then introduced testimony. After the charge of the Judge the jury rendered a verdict for the defendant in the sum of five hundred dollars. Thereupon the plaintiff appealed.

And in his first ground he submits that the Judge erred in not sustaining the plaintiff's demurrer.

So far as the allegations of fraud set forth in these exceptions to which the demurrer was directed they have no bearing on the issue, for the reason that a general allegation of fraud is a mere legal conclusion rather than the statement of facts, and therefore insufficient. *State* v. *Jaques,* 65 S. C., 154, 43 S. E., 393; *Chemical Co.* Youngblood, 58 S. C., 56, 36 S. E., 437. Thus it is manifest that the specific allegations, which are identical in each defense, are only to be considered by us. The nine

instances specified are already set forth in this opinion.   We are very much inclined to hold that these representations are nothing but a statement of the seller's opinion of these two machines; the defendant admits there was no guarantee as to any qualities as to the machines.   They seem but expressions of opinion.   As said in *Ruberg* v. *Brown,* 50 S. C., 397, 400, 27 S. E., 873, "the general rule undoubtedly is that mere expressions of matters of opinion, however erroneous or false, will not support an action for misrepresentation, and that statements as to the value of the thing sold are generally mere expressions of opinion, and come within the rule. Cooley on Torts, 483 ; 3 Sutherland on Damages, 584 ; 5 A. & E. Enc. L., 324; *Fraser* v. *Harvey,* 2 Bailey, 270; *Means* v. *Brickell,* 2 Hill, 320; *Rupart* v. *Dunn,* 1 Rich., 105, and *Lebby* v. *Ahrens,* 26 S. C., 282, 2 S. E., 387."

In Bishop on Contracts, the rule is stated, "the law, departing from the rule in morals, tolerates a good deal of lying in trade, when in the nature of merely puffing one's own goods or depreciating those of another, provided the thing bargained about reveals its own qualities, and is open to the party's equal inspection."   In 20th Cyc., page 53, it is said : "General assertions or expressions of a vendor in commendation of his lands or wares—commonly called dealers' talk—are generally held to fall within the rule under discussion and thus to constitute no ground for an action of deceit.   Statements merely descriptive of the operation and utility of an invention or patented article are generally regarded as mere expressions of opinion or dealers' talk, upon which a purchaser cannot safely rely; and even misrepresentations as to experiments which have been made with the invention and have proved successful have been held to be merely expressions of opinion, and so not actionable, although put in the form of a statement of past facts."

In the matter here under consideration, no efforts were made, so far as proofs show, to prevent the defendant from a full investigation of the machines while in actual use by the plaintiff.   The defendant remained in the examination

of the machines as long as he desired, and that, too, while the plaintiff was not present.  No effort was made at concealment by the plaintiff, but the defendant was left with the servants of the plaintiff, and therefore could have asked any questions he thought proper.  It must be admitted, however, that whether the said machines would set clear type with little practice by the operators was not admitted by the plaintiff or his witnesses, and the same may be said as to there being no trouble in correcting the galleys, and the same may be said as to any person of ordinary intelligence operating the machines.  The same may be said about the machines doing the work of five printers, who work by hand, and so in regard to the other statements of opinion by the seller.

There can be no doubt that Mr. Ayer had bright hopes of the sterling qualities of these machines when he bought them.  So it may be said of any purchaser when he makes a trade.  The fact that the plaintiff, when he bought the machines, five years before, paid six thousand dollars for them, and after five years' use was selling the same at eight hundred dollars, was a strong indication either that the machinery was inferior, or supplemented by other machinery adapted to this work.

As before remarked, the two machines were at work; when the defendant investigated, he saw them for himself.

As was said in *Lake* v. *Tyree,* 19 S. E., 787, 789: "The mere expression of opinion, however, even in strong and positive language, is no fraud, though it be false."  It has been held by courts when considering statements made by an owner to induce another to purchase mining stock, "that the mine was rich in silver, would pay a dividend of from twenty to one hundred per cent., and there was enough ore on the dump to pay the par value of the stock, are matters of opinion, and though false do not constitute fraud," *Croker* v. *Manley,* 56 Am. St. Rep., 196.  As said in *Parker* v. *Moulton,* 19 Am. Rep., 315: "The affirmations here set out as between buyer and seller, it has been repeatedly decided,

will not support an action, although the defendant knew them to be false when made. They concern the value of land or its condition and adaptation to particular uses which are only matters of opinion and estimate, as to which men may differ. To such representations the maxim *caveat emptor* applies. The buyer is not excused from examination, unless he be fraudulently induced to forbear inquiries which he would otherwise have made. If fraud of this latter description is relied on as an additional ground of action, it must be specifically set forth in the declaration, and cannot be charged in the general terms only."

I think, therefore, that there were not sufficient allegations to make out a case of fraud, and it was error to overrule the demurrer.

Secondly: It is contended that the Circuit Judge erred upon the close of the testimony in not directing a verdict for the plaintiff on the ground that the plaintiff's case in chief had been fully proven and that defendant had entirely failed to establish the allegations in reference to false representations.

It is a delicate duty of the Circuit Judge to direct a verdict, and the duty ought not to be exercised by him unless it is perfectly plain. In the case at bar, the appellant pitched his battle upon false representations of the plaintiff, hence if the Judge decided that defendant's position was untenable, the plaintiff was entitled to a recovery. The Judge, therefore, committed error here.

The third, fourth, fifth and sixth exceptions, which are as follows:

Third: "His Honor erred, it is respectfully submitted, in not setting aside the verdict of the jury and granting a new trial. He should have held that the verdict was contrary to the overwhelming weight of the testimony, and should have set it aside and granted a new trial.

Fourth: "His Honor erred, it is respectfully submitted, in refusing to charge plaintiff's third request to charge, as follows: 'There is no fraud or deceit in a contract between

parties capable of contracting, where no fiduciary relation exists, where no facts are concealed,' the same containing a correct proposition of law, directly applicable to the facts of the case.

Fifth: "His Honor erred, it is respectfully submitted, in refusing to charge plaintiff's fifth request to charge as follows: 'Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations,' the same containing a correct proposition of law directly applicable to the facts of the case.

Sixth: "His Honor erred, it is respectfully submitted, in refusing to charge, as requested by plaintiff's sixth request to charge, as follows: 'Representations, for instance, amounting merely to commendatory expressions or exagerated statements as to value, prospects or the like, as where the seller puffs up the value of and quality of his goods, or a man, to induce another to contract with him, holds out flattering prospects of gain, are not regarded as fraudulent,' the same containing a correct proposition of law and directly applicable to the facts of the case."

I sustain each of these exceptions; indeed, when the first exception was sustained, this follows as a necessary consequence.

I think the Circuit Judge erred, and that the judgment of the Circuit Court should be reversed.