## 9747

### BASKIN v. SPROUT, WALDRON & CO.

#### (93 S. E. 1004.)

SALES — FRAUDULENT REPRESENTATIONS — QUESTIONS FOR JURY. — In an action alleging fraudulent representations as to quality of certain mill machinery sold, where there was testimony from which a reasonable inference might be drawn that defendant knowingly and intentionally took advantage of plaintiff, the case was properly submitted to the jury.

Before SMITH, J., Florence, Fall term, 1916. Affirmed.

Action by A. L. Baskin against Sprout, Waldron & Co. Judgment for plaintiff, and defendant appeals.

*Messrs. Willcox & Willcox* and *S. M. Wetmore,* for appellant, cite: *As to plaintiff's remedy:* 102 S. C. 130.

*Messrs. Whiting & Baker,* for respondent, cite: 80 S. C. 292, 298; 92 S. C. 389.

July 10, 1917.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action alleging a fraudulent sale of certain mill machinery to the plaintiff by the defendant. The answer denied the material allegations of the complaint, and set up a counterclaim for the unpaid purchase money, to which the plaintiff filed a reply. At the close of the testimony the defendant made a motion for the direction of a verdict, which was refused. The jury rendered a verdict in favor of the plaintiff for $650, and the defendant appealed.

The complaint contains these allegations:

(1) "That on or about January 31, 1915, upon defend-ant's solicitation, and in consequence of its representations as to the superiority of its mill machinery, and the fitness of such machinery for the use required of it, in plaintiff's meal and grits mill at Florence, S. C., plaintiff gave to defendant an order for mill machinery, a copy of which is hereto attached and made a part of this complaint."

(2) "That in giving his order for said mill machinery plaintiff had no opportunity of seeing the same or similar mill machinery in operation, or otherwise of making personal inspection of said machinery, but relied wholly upon the representations made by defendant that it would give, at low cost of operation, the capacity of output and quality of grist required in plaintiff's business, and was especially adapted to furnish the finest quality of meal, having a capacity of between 25 and 30 bushels of meal per hour, and being less expensive to operate, and much superior to the 'upper runner' mill which plaintiff had intended to purchase; that having fully informed and advised defendant as to the conditions and requirements of the business, and the necessity of furnishing the best quality of meal and grits for his trade, plaintiff trusted to the supposedly superior knowledge and experience of defendant for advice as to the kind of machinery best adapted to his needs, depending entirely, in making such purchase, upon defendant's honesty and business integrity in furnishing machinery that would give satisfactory results, in accordance with its representations as aforesaid."

(3) "That said representations were recklessly and fraudulently made by defendant, to induce the purchase of its said machinery, with full knowledge of the fact that plaintiff had no other means of information as to the merits thereof; and that the mill machinery furnished by defendant upon plaintiff's said order has utterly failed to give promised results, and has been wholly unsatisfactory and worthless for plaintiff's business, the capacity of the mill being much

less than represented, the quality of meal. inferior, and the machinery heating very quickly in operation, thereby greatly increasing the work and expense of operation, causing considerable loss of weight in the grist by evaporation, and also causing much of the grist to become caked and soured."

(4) "That in consequence thereof, plaintiff was unable to furnish the quality of meal demanded by his trade, or to operate his said milling plant to advantage, and about June 1, 1915, was compelled to discontinue the operation of his said mill, after advising defendant of said unsatisfactory conditions, and failing to get any attention, or even a response, to such complaint; that being unable to put said mill in satisfactory condition, or to obtain any relief from defendant in respect to said machinery, notwithstanding requests made of defendant to send its representative to Florence for such purpose, it has since been necessary for plaintiff to take out said machinery, in order to replace same with other mill equipment."

The agreement between the parties, as stated in the order hereinabove mentioned, was as follows:

"You (the defendant) guarantee that the machinery herein mentioned shall be made of good material and in a workmanlike manner, and, when properly installed and operated according to your directions, it will do the work for which it was designed and constructed as well as any other machinery of like capacity, designed to do the same class of work and operated under like conditions."

The plaintiff claimed that he was damaged in the sum of $1,255. The only error assigned on the part of his Honor, the presiding Judge, is:

"In refusing, upon the close of all the testimony, to direct a verdict for the defendant—its counterclaim having been established—on the ground that the plaintiff had totally failed on the whole record to prove his allegations of fraud as alleged in his complaint."

There was testimony tending to prove all the allegations of the complaint, from which a reasonable inference might

be drawn that the defendant knowingly and intentionally took advantage of the plaintiff, thereby causing him heavy damages. Such facts were sufficient to render the defendant liable, and it was for the jury to draw the inference from them. *Walker, Evans & Cogswell v. Ayer,* 80 S. C. 292, 61 S. E. 557; *Welborn v. Cobb,* 92 S. C. 384, 75 S. E. 691

Affirmed.

MR. JUSTICE FRASER concurs in the opinion of the Court

MR. JUSTICE GAGE. I concur with the Chief Justice. The testimony is preponderant that the mill was erected and operated properly; that its output fell very far short of what the defendant represented it would be; that the mill was in fact a failure, no matter what other mills were. The plaintiff promptly commenced his action for relief; he did not wait to be sued for the price. There is no suggestion in the whole record that the plaintiff is merely trying to get out of a bad bargain.

Fraud is a subtle agency, and generally operates from hiding. The trial Judge saw the witnesses and approved the verdict. The law of fraud was correctly charged, for there is no exception to the charge. I am content to let the case rest where the Court and jury put it.

MR. JUSTICE HYDRICK. I dissent, because I do not think the testimony warrants the finding of fraud in the sale, especially in view of the undisputed evidence that two other mills of the same kind and make were then in operation in this State, and had given, and up to the time of the trial were giving, satisfactory results, such as had been promised for the one sold plaintiff. The only evidence upon which the finding of fraud in the sale can be predicated is the mere fact that the mill did not turn out the quantity of meal per hour that defendant's agent said it would, and that the meal was heated in grinding, so as to impair its market value. I do not think that is enough to justify the finding of fraud in the sale. It would be dangerous to lay down the principle

that the mere fact that a machine will not do what the sellet said it would (though he had every reason to believe that it would is sufficient evidence to sustain a finding that the seller knew, when he sold it, that it would not do what he said, and that, too, when such inference is opposed by undisputed evidence that the same kind of machines were then in operation, and doing just what the seller said they would do.

MR. JUSTICE WATTS.　I concur in the views of MR. JUSTICE HYDRICK in his dissent.