12711

SOUTHERN IRON & EQUIPMENT CO. v. BAMBERG, E. & W.
RY. CO.

(149 S. E., 271)

508

512

514

*Mr. E. H. Henderson,* for appellant,

*Messrs. Wm. C. Wolfe,* and *Bert D. Carter,* for respondent,

August 10, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The facts giving rise to this action are, briefly, these:

The respondent, Bamberg, Ehrhardt & Walterboro Railway Company, hereinafter referred to as the railway company, is an interstate carrier of commerce, and is therefore subject to all the federal laws relating to interstate commerce, including the Safety Appliance and Boiler and Locomotive Inspection Acts of Congress.

The appellant, Southern Iron & Equipment Company, hereinafter referred to as the equipment company, is a corporation, existing under the laws of the state of Georgia, and having its principal place of business in the city of Atlanta.

The railway company, being in need of a locomotive, began negotiations with the equipment company for the purchase of a locomotive during October, 1926. Its general manager, Mr. Folk, made several trips to Atlanta; specifications of said locomotive were delivered to the railway company by the equipment company, and considerable correspondence took place between said companies before the consummation of the sale. On November 17, 1926, said companies entered into a written sales contract, whereby the equipment company agreed to sell and the railway company to purchase the locomotive involved in this action for the sum of $6,000.00, $2,000.00 of which was paid in cash, and the balance evidenced by seven notes, bearing interest from November 22, 1926, at 6 per cent., and further providing for all costs of collection, including 10 per cent. attorney's fees if placed in the hands of an attorney for collection. Said notes further provided that, if any one of same should become due and remain unpaid for 30 days, the vendor or holder should have the right to declare them all due.

None of these notes were paid at maturity, and this action was instituted on the 9th day of May, 1927, having for its object the collection of the said seven notes, aggregating $4,000.00, with interest thereon, and attorney's fees, and a small open account of $40.24, totaling $4,741.38. The

defendant duly answered, admitting the execution of said notes, and further alleging, by way of affirmative defense, that said notes were procured from the railway company by intrigue, deception, misrepresentations, and fraud; that said notes were made for the balance of the purchase price of said locomotive, which was bought solely on the representations of equipment company, its officers, agents, and servants, to the effect that said engine was worth said purchase price, was in first class I. C. C. condition, and would meet such requirements, was without boiler patch or patches, contained two new cylinders, and other details claimed by equipment company; that the railway company relied and acted upon such representations, believing them and having no means of ascertaining their truth or accuracy, and, but for them, it would never have purchased said locomotive or executed said notes; that said representations were sworn to by officers of equipment company, which affidavits were delivered to the railway company and relied and acted upon by it; that, upon the arrival of the locomotive in Bamberg, and before putting same in service, an official inspection of same was made by the regular government interstate commerce boiler inspector, who refused to allow defendant to use the locomotive, and who found that the same was not in I. C. C. condition, and would not meet its lawful requirements, as had been claimed by equipment company, was with boiler patches, without new cylinders and details as claimed by equipment company; that all of these conditions existed when equipment company sold the locomotive to the railway company, but it had no opportunity or means of knowing the true state of facts; that equipment company had said locomotive in its possession for a great while, and said misrepresentations were made knowingly, willfully, falsely, and fraudulently, with intent to deceive and defraud; that said misrepresentations induced it to bargain for said engine; that the said locomotive was worthless and useless to the railway company on account of its defects.

The action was tried at the April, 1928, term of the Court of Common Pleas for Barnwell County before Judge Shipp and a jury, and the following verdict was rendered by the jury: "We find for the defendant in the sum of $2,000.00 and the cancellation of all notes, and locomotive to be tendered to plaintiff at Bamberg."

The equipment company appeals to this Court upon the exceptions set out in the record, and which will be reported.

Exceptions 1 to 7, inclusive, impute error to the Circuit Judge in admitting in evidence, over appellant's objection (1) the paper called "Specifications of Locomotive No. 2022," Exhibit 9; (2) letter from equipment company to railway company of November 11, 1926; (3) testimony of Mr. Folk as to oral statements of Mr. Pratt, vice-president, and of Mr. Kern, president of equipment company, to the effect that there were no patches on the boiler; (4) testimony of Mr. Folk as to oral statements of said Mr. Pratt that the engine contained two new cylinders; (5) testimony of Sikes that said Kern said that the boiler contained no patches; and (6) refusal of the Trial Judge to strike out all of the testimony as to any representations as to the condition or quality of the locomotive, on the ground that said evidence and testimony varies, adds to, alters, and contradicts the terms of the written contract of November 17, 1926. Let this contract, with Exhibits 9 and 10 be reported.

The portion of the sales contract, which appellant contends was varied, altered, and contradicted by the evidence complained of in these exceptions is as follows:

"Said property (the locomotive) is accepted in its present condition, without recourse on said vendor for any claim for repairs, or otherwise."

The pertinent inquiry is, Does the evidence complained of vary, alter, or contradict the written contract in the particulars alleged? If not, the Circuit Judge committed no error in admitting said evidence, nor in failing to strike it out after admitting it.

"As in cases of other contracts the rule prohibiting the admission of oral evidence to vary written contracts does not preclude the admission of such evidence to establish fraud on the part of one of the parties to a contract of sale. The reason for this is self-evident, since. fraud in a contract could never be proved, if its terms were held to preclude all other evidence in regard to it. Evidence of the fraudulent misrepresentations of the seller is held admissible though the contract expressly provides that 'no other conditions or representation than those herewith printed shall be binding' on the parties. For the purpose of establishing fraud as a ground for damages or for a rescission of the contract as distinguished from an oral warranty, oral evidence of fraud-ulent misrepresentations by the seller as to the character, etc., of the property sold is held admissible, and it has been held that oral evidence is admissible to show the unsound-ness of the article sold, and the seller's knowledge thereof, for the purpose of establishing fraud on his part as a ground for the buyer's recovery of damages." 23 R. C. L., 1393.

"False and fraudulent misrepresentations by the seller as to the subject matter of the contract may constitute fraud for which the buyer may maintain an action for damages or rescind the sale, and as a general rule every willful mis-representation by the seller in respect to a fact affording a material inducement to the sale and which operates to de-ceive the buyer may be made the basis of a charge of fraud. It is not essential to found a charge of fraud that a mis-representation be directly made; if a false impression is made by words or acts in order to mislead and has such effect, it may be sufficient. Fraudulent representations may be as well by arts or artifices calculated to deceive as by posi-tive assertions, and concealment, when a duty to disclose is imposed on the seller, may form the basis of a charge of fraud as in case of active misrepresentations." 24 R. C. L. 334.

"As in case of other contracts, if the seller has been guilty of fraud the buyer may rescind and recover the

purchase price if paid in whole or in part, or escape liability for the price if unpaid. However, to entitle the buyer to recover what he has paid in an action of assumpsit, he must put an end to or rescind the contract and must ordinarily before commencing his action give notice to the seller of his election to rescind." 24 R. C. L., 356.

"In order that a charge of fraud may be based on false representations by the seller it is not necessary that they be made at the exact time of the sale; it is sufficient if they were made in view of and to induce the buyer to make the purchase and in fact had such effect." 24 R. C. L., 335.

"To constitute a misrepresentation a ground of fraud for avoiding the contract, or to entitle the buyer to his action, it must be in regard to a material fact, operating as an inducement to the purchase, and on which the buyer had a clear right to rely." 24 R. C. L., 337.

"The buyer must have relied on the alleged fraudulent representations of the seller to entitle him to base a charge of fraud thereon, and therefore if the buyer has actual knowledge of the falsity of the representation he cannot do so. And ordinarily when the buyer undertakes to make full investigation of his own and the seller does nothing to prevent his investigation from being as full as he chooses to make it, the buyer cannot afterwards allege that the seller made misrepresentations. But the fact that they may have made investigation in respect to the representations of the seller will not preclude him from basing a charge of fraud thereon if in fact he relied on them and was deceived." 24 R. C. L., 338.

"To found an action of deceit on the falsity of a representation it is ordinarily necessary to show scienter or knowledge on the part of the defendant of the falsity of his representation, and this rule is generally applied to representations by the seller as to the subject matter of a sale." 24 R. C. L., 344.

"To prove knowledge of the falsity of a representation of the seller quite a wide latitude is permitted in regard to the admission of evidence, as it is a matter which is ordinarily not the subject of direct proof but is to be inferred from the circumstances surrounding the transaction." 24 R. C. L., 347.

"Fraud is a false representation of a fact, made with knowledge of its falsity, or recklessly, without belief in its truth, with the intention that it shall be acted upon by the complaining party, and actually inducing him to act upon it to his injury. Fraud renders a sale or a contract to sell voidable; and the same state of facts which is ground for avoidance of the contract may also, although not necessarily, give rise to an action for deceit." Cyc., 63.

"But it is generally held in this country that the intentional nondisclosure of a latent defect by the seller, when he knows that it is unknown to the buyer, is fraudulent." 35 Cyc., 69.

"Fraudulent misrepresentations by the seller concerning the quality, character, or soundness of the goods are ground for avoiding the contract, provided the circumstances are such that the buyer was entitled to rely on the representations." 35 Cyc., 73.

"The contract of sale may be rescinded for fraud of either the buyer, or the seller." 35 Cyc., 130.

"One may be guilty of misrepresentation in law, as well as in morals, by purposely creating a false impression of belief in the mind of another, with the intention that he act upon it, without making any positive or literal false statement of fact. The suppression of the truth, with misleading suggestions, may be as effective to create an erroneous or false impression as a direct falsehood." *Welborn v. Cobb,* 92 S. C., 384, 75 S. E., 691, 694.

We do not think that the evidence complained of in any manner varied, altered, or contradicted the written contract.

Such evidence was in response to the allegations of fraud in respondent's answer. In such cases, much latitude is allowed in admission of evidence. *Continental Jewelry Co. v. Kerhulas,* 136 S. C., 496, 134 S. E., 505. Where the seller makes false representations as to the character or quality of the subject-matter of the written sales contract, with intent to induce the buyer to enter into same, and reliance is had upon such representations, it matters not what the contract provides as to the terms and conditions of such sale, since the contract, with all its recitals, falls to the ground when it is made to appear that such false representations were made to and relied upon by the buyer. *McKinley Music Co. v. Glymph,* 100 S. C., 200, 84 S. E., 715.

By reference to Exhibit No. 9, it will be seen that it contains, among other things, the following specifications: "Patches none  * * *  just out of shops from complete overhauling; new cylinders; complies I. C. C. requirements; federal boiler laws, etc." In equipment company's letter of November 11, Exhibit 10, it is stated, "This being the engine which has just received new cylinders." From the witnesses of equipment company, we learn that said company was willing to stand by Exhibit 9, and that it expected the railway company to accept the same as true and act thereon; that the boiler, in fact, did contain a patch and only one new cylinder; that these facts were known to the equipment company at the time Exhibits 9 and 10 were delivered; that the equipment company knew that the railway company wanted a locomotive for carrying interstate commerce, and that the locomotive sold by it to do interstate business had to come up to I. C. C. requirements; that I. C. C. forms 3 and 4 were filled in and sworn to by equipment company, which stated that all defects disclosed by an inspection just made had been repaired, except as noted on the back of form 3, and that no notation was made on the back thereof; that these forms were delivered to the general

manager of the railway company to be filed with Interstate Commerce Commission; that, after the sale and delivery of the locomotive, to wit, on December 6; 1926, equipment company mailed to the railway company an alteration report for locomotive boiler and blueprint, with request that same be attached to I. C. C. papers; that said alteration report showed that a patch had been applied to the boiler, as shown by the blueprint attached, which blueprint showed a crack in the boiler three inches long; that equipment company owned this locomotive about ten months prior to the sale, and had stripped the boiler down and repaired same, and knew that the boiler had a crack in it as shown by the blueprint; that the locomotive only had one new cylinder, which was also known to equipment company; that the officers or agents of equipment company were present at the time the representatives of the railway company inspected the locomotive, but made no statement as to the existence of the crack in the boiler, or of the patch applied thereto, although such facts were known to such officers and agents; that, in order to enable a thorough inspection of the locomotive, it would have been necessary to have the boiler stripped down, which meant to take off the steel jacket, then the asbestos lagging, and even then, according to one of equipment company's witnesses, it would have been necessary to put it under pressure before the crack could have been discovered. The boiler was not stripped down, and a complete inspection was not made.

It is apparent, therefore, that the crack in the boiler was a latent defect.

"If the defect in quality is latent and not discoverable by a reasonable examination and the commodity is received without knowledge of such defect, the acceptance does not preclude the buyer from subsequently asserting a claim for damages on account of such defect, and if the inferior commodity tendered is expressly received by the buyer as an independent purchase, and not as a tender under the contract,

its acceptance does not affect the buyer's right to claim damages for the failure of the seller to furnish a commodity of the required quality." 23 R. C. L., 1441.

Caveat emptor is the general common law rule as to the sale of chattels and if the article is unsound, to entitle the buyer to relief, he must rely either on a warranty or fraud." 24 R. C. L. 332.

"* * * The general rule is that if the defect is latent and not subject to discovery on a reasonable examination, the seller, if he has knowledge thereof, is bound to disclose the same, and his failure to do so may be made the basis of a charge of fraud. Failure to make such disclosure is to be deemed, it seems, fraud in law without regard to the intention to deceive. Whether the charge of fraud is based on actual misrepresentations or alleged fraudulent concealment, there must be fraud, and to decide whether there is fraud knowledge of the fact misrepresented or .not communicated is most important. In both, there must be an intention to deceive, but this intention may be imputed, and in some cases will be conclusively imputed, upon the principle that a party must be presumed to intend the necessary consequences of his own acts or conduct." 24 R. C. L., 333.

Respondent did not make a complete inspection of the locomotive, but had verbal and written representations as to its quality. Upon these it had a right to rely. The undisputed testimony is that it did rely upon them. Appellant knew of the defects complained of, but concealed them. This is not all; it not only concealed them, but positively stated in writing and verbally that such defects did not exist. It is not easy to imagine a clearer case of actionable fraud.

"The fact that the contract of sale is in writing does not preclude a party from avoiding it on the ground of fraud whereby he was induced to enter into the contract." 35 Cyc., 67.

But the rule of *"caveat emptor"* is not applicable in this state, but rather the rule *"caveat venditor"* obtains. *Barnard v. Yates,* 1 Nott & McC., 142. Sound price warrants a sound commodity. *Thompson v. Lindsay,* 3 Brev., 305, Id., 1 Tread. Const., 236. Selling for a sound price raises an implied warranty that the thing sold is free from defects, known and unknown. *State v. Gaillard,* 2 Bay, 11, 1 Am. Dec., 628; *Barnard v. Yates, supra; Eastland v. Longshorn,* 1 Nott & McC., 194; *Lester v. Graham's Ex'rs,* 1 Mill Const., 182; *Rose v. Beatie,* B Nott N McC., 538; *Missroon v. Waldo,* 2 Nott & McC., 76. And such implied warranty of soundness is not excluded by a written contract. *Wood v. Ashe,* 3 Strob., 64. Upon discovery of the defects alleged in respondent's answer, it was entitled to relief, upon the implied warranty, apart from the question of fraud or express warranty.

Exception 8 is disposed of by what has been said in the consideration of the preceding exceptions.

By exceptions 9 and 10, error is imputed to the Circuit Judge in refusing to direct a verdict in favor of the plaintiff upon the grounds that, since the written contract of November 17, 1926, provided that the locomotive was sold in its present condition the defendant (a) had no right to rely upon any oral representations made to him; and (b) was grossly negligent in not paying attention to the terms of the contract, and on account of such negligence is precluded from recovery.

"If a party's situation, with reference to property contracted for, is such that he cannot fairly and reasonably exercise his own judgment in reference thereto, he is not a dealer on equal terms, and has a right to rely on representations of value by the seller made to induce the purchase." *Walker, Evans & Cogswell v. Ayer,* 80 S. C., 292, 61 S. E., 557, 560.

Can it be said that the parties dealt on equal terms? The appellant had been in possession of the engine for almost a

year, had torn it down and repaired it, had discovered the crack in the boiler and applied a patch, knew that it contained only one new cylinder, and therefore had full knowledge of its condition. One of appellant's own witnesses testified that respondent made only a casual inspection, that he knew of the boiler patch and crack in the boiler, but did not inform respondent's agents thereof, for the reason that he was not asked.

■ There is no question here of inattention on the part of the general manager of respondent to the terms of the contract or of failure to read same at the time of its execution. The question is, Did appellant induce respondent to sign the contract in question by means of false representations as to the character or quality of the locomotive? Whether false representations were in fact made, and, if so, whether they were relied upon and induced respondent to sign the contract, were proper questions for the jury. *Knight v. Bennett,* 128 S. C., 107, 121 S. E., 671.

■■ It was not incumbent upon respondent to make a full and complete inspection of the locomotive before purchasing it, and no such inspection was made. Of course, there was no implied warranty against obvious defects, or of defects which respondent had notice. But if, by fraud, misrepresentation, or deceit, respondent was misled respecting the character or extent of a known defect, there was an implied warranty. *Wood v. Ashe,* 3 Strob., 64. Notice that the locomotive was secondhand did not put respondent on notice not to rely on the representations of appellant that it had no patches on its boiler, that it had two new cylinders, and that it complied with I. C. C. regulations. *Walker, Evans & Cogswell v. Ayer, supra.*

What was the contract sale? Equipment company offered to sell a locomotive to the railway company without patches on the boiler, with two new cylinders, one that complied with I. C. C. regulations, etc. It was this offer that was accepted by the railway company. That was the condition of

the locomotive as represented and offered to the railway company. It was not possible for the railway company to ascertain whether or not the locomotive was in that condition without a full and complete inspection. Instead of making such inspection, it elected, as it had the right to do, to accept the representations of the seller as to the quality of the engine and act and rely thereon. The positive testimony of respondent's witnesses is to the effect that such representations were relied upon, and induced the purchase of the locomotive. It would be a plain fraud on the part of the seller to make false representations as to the quality or character of an article for the purpose of inducing the offeree to purchase same, and, after the sale is made and the purchaser signs a written contract to accept it in its "present condition," to attempt literal compliance with the terms of such written contract, regardless of the false representations without which the contract would never have been signed at all. If respondent relied upon these representations as to the present condition of the locomotive, we see no evidence of negligence, gross or otherwise, in signing the contract in question. Even if no positive statement had been made to respondent by appellant, either verbal or witten, as to the quality of the engine, yet it was the plain duty of appellant to disclose the latent defect (boiler patch, etc.), and conscious concealment of such fact was fraudulent, and this would have been true if appellant has refused to warrant the soundness of the article. *Hough v. Evans,* 4 McCord, 169.

In view of the allegations in the answer of respondent of fraudulent representation made by appellant as to the quality of the machine, and of the testimony offered by respondent tending to show that said representations were known by appellant to be false, the case was properly submitted to the jury. *Baskin v. Sprout et al.,* 108 S. C., 226, 93 S. E., 1004; *Walker, Evans & Cogswell v. Ayer,* 80 S. C., 292, 61 S. E., 557; *Welborn v. Cobb,* 92 S. C., 384, 75 S. E., 691.

By exceptions 11, 12, 13, and 14, error is imputed to the Circuit Judge in refusing to direct a verdict in favor of the plaintiff on the grounds (1) that respondent inspected the locomotive before making the contract, and should not be allowed to say that it was misled by any representation; (2) that respondent accepted and used the engine after the alleged representation, which operated as (a) a waiver of the alleged fraud, and (b) as an estoppel from claiming fraud; (3) that respondent is not entitled to rescind the contract for fraud or otherwise, for the reason that it has not made an unconditional tender of the locomotive back to appellant, and has not offered to pay it for the intermediate use of the locomotive.

In *Building Supply Co. v. Jones,* 87 S. C., 426, 69 S. E., 881, 882, this Court said: "The general rule is that if, before acceptance of goods, material variance from the quality contracted for is so obvious that the purchaser has observed it, or by ordinary inspection would have observed it, and nevertheless accepted the goods, he will be held to have waived the variance from the quality he was entitled to demand. *Woods v. Cramer,* 34 S. C., 508, 13 S. E., 660; *Brooke v. Milling Co.,* 78 S. C., 200, 58 S. E., 806 [125 Am. St. Rep., 780]. But if the defects are not so obvious to ordinary inspection, and are not actually discovered until after acceptance, then the purchaser may, according to the circumstances, offer to return the goods and have rescission of the contract, or retain them and have an abatement of the price. *Gray v. Handkinson,* 1 Bay, 278; *Adams v. Kibler,* 7 S. C., 47; *Kauffman Milling Co. v. Stuckey,* 40 S. C., 110, 18 S. E., 218; *Martin v. Seaboard A. L. Ry.,* 70 S. C., 8, 48 S. E., 616. It is the duty of the seller to afford an opportunity for inspection, and the purchaser cannot be held to have accepted the goods and waived defects by the mere act of unloading or by the doing of any other act if such act be necessary to inspection. 35 Cyc., 225. Whether the buyer has had the opportunity to inspect and reject the

goods, is ordinarily a question of fact for the jury." See, also, *Southern Coal Co. v. Rice*, 122 S. C., 484, 115 S. E., 815.

The undisputed evidence is that respondent only made a casual inspection of the locomotive before purchasing same. It had a reasonable time thereafter in which to make inspection, and whether it made the inspection and accepted the locomotive after such inspection were questions for the jury. *Smith Bros. Grain Co. v. Milling Co.*, 128 S. C., 434, 122 S. E., 868; *Griggs-Paxton Shoe Co. v. Friedheim*, 133 S. C., 458, 131 S. E., 620; *Anderson v. Grocery Co.*, 99 S. C., 383, 84 S. E., 109.

It affirmatively appears that respondent, as soon as the defect was ascertained, apprised appellant of same, and offered to return the engine, but appellant refused to accept same.

"Where a tender of the goods received by the buyer is rejected by the seller, that is all that is required of the buyer to entitle him to exercise his right of rescission, and his necessary retention of them as the goods of the seller following the rejection cannot affect the operative effect of the buyer's rescission and his right to recover the price or avoid liability therefor if unpaid." 24 R. C. L., 361.

"In this State, the purchaser of a chattel may, by tender back, rescind the contract, without the consent of the seller, in the following cases: 1st. Where the right to return the property was a part of the original contract. 2nd. Where there has been fraud; and 3rd. Where there has been an entire failure of consideration." *Carter v. Walker*, 2 Rich., 40; *Kauffman Milling Co. v. Stuckey, supra.*

"If the purchaser fails to give notice of the unsoundness to the seller, within a reasonable time after discovering it, the jury may take such fact into consideration in determining whether he waived the right to insist upon the breach of warranty." *Greenwood Cotton Mill v. Tolbert*, 105 S. C.,

273, 89 S. E., 653, 655, Ann. Cas., 1917-C, 338; *Ramsey v. Hill*, 92 S. C., 146, 75 S. E., 366.

"While it is not necessary that a buyer rescind a sale immediately upon his discovery of grounds therefor, the buyer must exercise his right to rescind within a reasonable time after discovery of the facts justifying rescission. What is a reasonable time must in each case depend on the circumstances attending it, such as the nature of the objection, the location of the parties with respect to each other, and the like. Whether the right to rescind was exercised within a reasonable time is usually regarded as a question for the jury. * * * The time within which the right is exercised must be computed from the discovery of the fraud or defect on which rescission is based and not from the date of the sale." 35 Cyc., 151.

"The intention to exercise the right of rescission must be shown either by notice, clearly indicating the purpose, or other acts and conduct evincing a purpose to abandon the contract, such as refusal to perform, the bringing of an action to rescind, retaking of the goods by action, or otherwise." *Id.*, 154.

"A rescission, whether by agreement or *in invitum*, terminates all the rights of the parties under the original contract and they cannot be revived except by the assent of both parties. The title to the goods is revested in the seller, and he cannot maintain an action for the price." *Id.*, 158.

How can it be said that the railway company waived the fraud or is estopped from alleging fraud by accepting and using the locomotive? The testimony tended to show that, as soon as the defects were discovered, equipment company was notified thereof; that, before the locomotive was used at all, it was inspected by the regular federal inspector, who forbade its use on account of the defects, or in other words, found it not to be in I. C. C. condition as represented by equipment company; that equip-

ment company then undertook to correct the defects, and represented to the railway company that it had been put in I. C. C. condition; that the railway company then attempted to use it, and did use it for a short time, but that it was not satisfactory, and it was again inspected by the same federal inspector, who again forbade its use; that railway company was all the while complaining to equipment company about the defects, and, when it was found that the locomotive was not put in I. C. C. condition, the railway company exercised its right to rescind the contract and offered to return the locomotive, but was not permitted to do so by equipment company. However valuable the locomotive might be for other purposes, if it was not in I. C. C. condition, it could not be used by the railway company for the purpose for which it was purchased, and was therefore worthless to it. If such was the case, there was a failure of consideration, which is a ground for rescission of the contract.

Railway company had paid to equipment company at the time of the purchase the sum of $2,000.00 in cash.

Upon rescission of the contract by railway company, it had a right to receive back this amount. Unless equipment company was willing to return the purchase money, the railway company had a right to retain possession of the locomotive during the dispute. *Trexler Lumber Co. v. Wilson*, 96 S. C., 176, 80 S. E., 271; *Kauffman Milling Co. v. Stuckey*, 37 S. C., 7, 16 S. E., 192; *Carter v. Walker*, 2 Rich., 40.

"In some cases the view has been taken that if the buyer has paid the purchase price in whole or in part he may qualify the tender back by a retention of possession until restitution is made by the seller; for this purpose and to this extent he is allowed to retain the possession as a security." 24 R. C. L., 359.

We find no error in the charge of the Trial Judge as complained of in exceptions 15 and 16.

The judgment of this Court is that all the exceptions be overruled, and the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.