## ADDISON v. BLAIR.*

---

REAL ESTATE; BROKERS; INDUCING CAUSE; COMMISSIONS.

1. While a broker who, authorized to make a sale of real estate, was the

---

*Brokers—Commissions.*—For cases upon the question of a broker's right to commissions where two or more real estate brokers for the same persons are instrumental in effecting a sale of property, see notes to *Hoadley* v. *Savings Bank*, 44 L.R.A. 337; *Jennings* v. *Trummer*, 23 L.R.A.(N.S.) 164; and *Dalke* v. *Sivyer*, 27 L.R.A.(N.S.) 195.

procuring cause of a sale by the owner, is entitled to commissions in the absence of bad faith on his part, even though the owner is ignorant of it at the time (citing *Bryan* v. *Abert,* 3 App. D. C. 180; and *Simms* v. *Booth, ante,* 263), it is also the rule that where the purchaser has negotiated with different authorized agents of the owner, the agent entitled to the commission. is he who first brings to the owner a contract satisfactory to him, which he accepts, provided there has been no collusion between the agent and owner to defeat another agent who negotiated with the purchaser. (Citing *Evans* v. *Shinn,* 40 App. D. C. 557.)

2. A broker who makes the second of two unsuccessful attempts to induce a person to buy real estate, suggesting the formation of a syndicate, is not the inducing cause so as to entitle him to commission, of a sale to a syndicate formed for the purchase of the land, which such person joins at the behest of persons who form it of their own initiative, in good faith, and without knowledge of the broker's previous activities.

No. 2640.  Submitted May 6, 1914.  Decided May 22, 1914.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the Court, in an action for the recovery of a broker's commission.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment in the supreme court of the District upon a directed verdict for the defendants, Woodbury Blair and National Savings & Trust Company, appellees here, in an action for the recovery of a commission of $45,000 alleged to be due Arthur D. Addison, the plaintiff, appellant here, in connection with the sale of the so-called Arlington Hotel property in this District.

The sole question for consideration is whether the court erred in directing the verdict. While we have carefully examined the unnecessarily voluminous record, we shall here content ourselves with a mere synopsis of the evidence and our conclusions thereon, since it would serve no useful purpose to set forth the evidence in detail.

The Arlington Hotel property had been for sale for several years, and different real estate agents had been endeavoring to sell it, no one of them having the exclusive agency. In the spring of 1908, Mr. William C. Hill attempted to interest a Mr. Marshall of New York in the property, and through him met a Mr. F. M. Andrews of New York, a hotel architect of some note and also somewhat of a promoter. Mr. Hill furnished Mr. Andrews with a plat of the property. Mr. Andrews talked encouragingly of his ability to induce friends of his to finance the project, and more or less correspondence and a few interviews ensued. Finally, in the spring of 1909, Mr. Andrews visited the office of Mr. Hill, in Washington, where an interview occurred between Mr. Blair, one of the defendant trustees, Mr. Hill, and Mr. Andrews. Nothing came of Mr. Hill's efforts, however, and his last connection with the transaction was in October, 1909, when he notified Mr. Andrews that the price of the property had been increased to $1,750,000. His efforts appear to have terminated with this letter. Nevertheless, after the sale of the property in the early part of 1911 to the Arlington Hotel Company, Mr. Hill brought suit against the defendant trustees for a commission, upon the theory that he had been the procuring cause of the sale. That suit was consolidated with this for trial, and when counsel for the plaintiff herein opened the case he stated to the court that "at a conference between the plaintiffs in the two cases and their counsel, it had been ascertained that both plaintiffs had endeavored to effect a sale of the Arlington Hotel property, and that both had approached the same party in their endeavors to make a sale; that therefore plaintiffs had agreed to submit their evidence to the court and jury, and would be satisfied for the jury to render a verdict in favor of whichever one the jury found had consummated the sale; that by an arrangement between the plaintiffs, in the event of a verdict for either one, they would divide the sum awarded." Mr. Hill, however, did not take an appeal from the judgment below.

Mr. Addison for some time had been attempting to sell the property, but his efforts were unsuccessful. Finally, in the

spring of 1910, he went to New York and, through a Mr. W. H. Barse, one of the managers of the Waldorf-Astoria, met the Mr. Andrews, with whom Mr. Hill had conducted negotiations. He gave Mr. Andrews the lowest price at which he thought the property could be purchased, and Mr. Andrews appeared to be interested in the proposition, although he told Mr. Addison that others had spoken to him about the property. The plaintiff furnished Mr. Andrews with another plat of the property and, at the third and last interview with Andrews, in November, 1910, he furnished him with a duplicate plat, the prior one having been mislaid. Mr. Addison testified that when he went to New York in the spring of 1910 it was at the request either of Mr. Barse or of General Bingham, "and Barse took up with witness the matter of acquiring the Arlington Hotel, and witness talked with him on several occasions, discussing the prospective formation of a syndicate for the purpose of buying the Arlington property; Barse was going to have some friends of his go into that, and Barse wanted to become the manager of the proposed hotel; after Barse and Addison had their discussion, the former called up Andrews, and plaintiff went over the question with Andrews and Barse; * · * * that he (plaintiff) took up with Andrews the purchase of the Arlington Hotel property only in connection with what was referred to as the Barse syndicate, and never took it up with him in any other way except in that proposition; he is not aware that the Barse syndicate was ever formed to buy this property, or that there was any Barse syndicate."

The uncontradicted evidence shows that early in 1910 a Mr. James F. J. Archibald, who was acquainted with several men of wealth, conceived the idea of a new hotel building on the Arlington site and of interesting his friends in the project. He then had no knowledge of what Mr. Addison had done, nor had he ever heard of Mr. Andrews. He next discussed the project with General Du Pont, and later, in the spring of 1910, at a dinner in New York city, he disclosed his plan to a Mr. White, president of the Cincinnati Electric Light Company, with offices in New York, who informed him that he knew "just

the man you should get in touch with, a friend of mine, Mr. Frank Andrews." Thereupon a meeting was arranged between Archibald and Andrews, and when Archibald broached the subject of the Arlington Hotel Andrews said: "That proposition has been brought up to me so often, it is a joke. Everybody in Washington seems to want to build the Arlington Hotel." After Archibald had told of those whom he expected to interest in the project, Andrews regarded the matter more seriously. In August, 1910, Mr. Andrews, Mr. Archibald, and a Mr. George Howard happened to take passage on the same steamship for England. At this time Howard did not know Andrews, and did not know that Archibald was acquainted with Andrews. Archibald and Howard, however, were well acquainted, and the former soon spoke to the latter about the plan he had conceived for the acquirement of the Arlington Hotel property. Knowing of Howard's acquaintance with local financiers, Howard then being treasurer of the National Savings & Trust Company, one of the defendants, Archibald proposed that Howard join him in the enterprise. Archibald explained his relations with General Du Pont, and introduced Howard to Andrews as a good man to have connected with the project. The three men then discussed the proposition. Later, in the fall, Archibald again discussed the project with Howard, the result being that Howard, Archibald, and Andrews actively took up the organization of the Arlington Hotel Company, which was incorporated in January following. This company, in March, 1911, contracted for the purchase of the old Arlington property. Neither Mr. Barse nor Mr. Addison had anything whatever to do with the promotion or getting up of the hotel company, or with obtaining the option which was procured in January, 1911, and taken up the following March. Mr. Archibald and Mr. Howard claimed the commission for the sale of the property, and were called upon by the defendant trustees to defend this suit. Since Mr. Addison must recover, if at all, upon the strength of his case, and not upon the weakness of that of Archibald and Howard, it is unnecessary further to pursue the evidence relating to their connection with the transaction.

*Mr. A. S. Worthington* and *Mr. Henry P. Blair* for the appellant.

*Mr. J. J. Darlington* and *Mr. Frank J. Hogan* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

It is true, as contended by counsel for the plaintiff, that when a broker authorized to make a sale is the procuring cause of a sale made by the owner, he is entitled to his commission in the absence of any showing of bad faith on his part, even though the owner is ignorant of it at the time. *Bryan* v. *Abert,* 3 App. D. C. 180; *Simms* v. *Booth, ante,* 263. It is equally true, however, that where there are a number of agents, "the purchaser may be negotiating with different authorized agents of the owner, and, if so, the agent is entitled to the commission who first brings to the owner a contract satisfactory to him, and which the owner accepts, provided there has been no collusion between the agent and the owner to defeat another agent who has been negotiating with the purchaser." *Evans* v. *Shinn,* 40 App. D. C. 557. In the present case the plaintiff does not contend that he brought any contract of sale to the defendants, and we are at a loss to understand upon what evidence he bases his contention that he was the procuring cause of the sale. He himself testified that his efforts were in connection with the prospective Barse syndicate, which was never formed, and that neither he nor Barse had anything to do with the formation of the syndicate which took over the property. His claim rests solely upon the connection of Andrews with the latter syndicate. On his own statement, the prospective syndicate which he discussed with Andrews never was formed, and the importance of this admission is still further apparent when it is borne in mind that Mr. Hill already had attempted to interest Mr. Andrews in the formation of another syndicate to take over the property. The proposed Barse syndicate failing to materialize, Archibald and Howard had the same right, unless they and the defendants were lacking in good faith towards Mr. Addison, and there is no

evidence even tending to show that they were, to interest Mr. Andrews in the formation of still another syndicate, as the plaintiff had in endeavoring to interest him in the formation of the Barse syndicate. As before stated, the uncontradicted evidence shows that it was Archibald who first went to Andrews, and the evidence is also uncontradicted to the effect that it was Archibald and Howard who took the initiative in the formation of the hotel company, and that Andrews assisted them, and not they him. In short, there is no evidence, as we read the record, tending to show that the plaintiff either directly or indirectly was the procuring cause of the sale made. He was neither the first nor the last to interest Andrews.

The judgment therefore will be affirmed, with costs.

*Affirmed.*