10847

HUTSON v. STONE *ET AL.*

(112 S. E. 39)

1. BROKERS—BROKER HELD ENTITLED TO COMPENSATION FOR SALE THOUGH ACTUAL AGREEMENT MADE BY OWNER, AS RESULT OF HIS SERVICES.—A real estate broker is entitled to compensation, where a sale is made during the continuance of his agency, as a result of his services, the procuring cause of the sale, even if the actual agreement of sale is made by the owner without the aid of the broker.

NOTE: On right to commissions where two or more real estate brokers acting for the same person are instrumental in affecting a sale of property to a certain purchaser, see notes in 44 L. R. A. 337; 23 L. R. A. (N. S.) 164, and 27 L. R. A. (N. S.) 195.

2. Brokers—Implied Agreement of Noninterference with Dealing of Real Estate Agent Extends to Acts of Seller Only Where Several Competing Agents Are Employed.—Though, where a monopoly to sell real estate is given, there is an implied understanding that the seller will not take advantage of the efforts of the agent to deprive him of compensation, and that no other will be permitted to do so, where several competing agents are employed, each of whom knows of the competition, the implied agreement of noninterference extends to the acts of the seller only.

3. Brokers—Owner of Real Estate Liable to Broker For Commission, in Case of Sale Through Competing Broker For Less Than First Broker Was Authorized to Sell.—Though an owner of real estate, who employs several competing brokers to sell it, if he remains neutral towards them, is liable for compensation only to the one who first completes a sale, or to the one who first produces a customer able, ready, and willing to buy the property, on terms agreeable to the owner, a broker conducting negotiations for the sale of land may not be deprived of his commission by the owner selling with knowledge of the facts to the same customer, through another agent, for a price less than the first broker was empowered to accept, provided the first broker was in fact the procuring cause of the sale.

4. Brokers—Sale by Competing Broker Revokes Authority and Terminates Agency.—Where a broker undertook to sell real estate in competition with others, an implied condition of his employment was that a prior sale by any one of the other agents on the owners' stipulated terms would revoke his authority and terminate his agency.

5. Brokers—Sale on Better Terms Granted to Competing Broker Held Not to Render Owner Liable to Other Brokers, in Absence of Express Stipulation or Implied Obligation to Contrary.—Where a property owner listed property for sale with competing brokers, a sale effected through his granting better terms to one of the brokers does not render him liable to the other brokers for commissions, since the listing with a broker is a mere offer to accept terms named, if a purchaser is found, and imposes no duty on the owner not to accept a less price through other agents, in absence of express stipulation or an obligation implied from special circumstances to the contrary.

6. Brokers—Evidence Held to Warrant Submitting Case to Jury on Theory of Breach of Duty to Maintain Impartiality Between Competing Brokers.—In an action by a real estate agent against a landowner, for a commission on a sale of land, effected by another

agent, evidence held sufficient to warrant submission of the case to the jury on the theory that granting better terms to the other agent by defendant was such a breach of defendant's duty to maintain a relation of impartiality between competing brokers as proximately caused a prior sale and the loss on that account of plaintiff's commission.

7. APPEAL AND ERROR—MOTION FOR NONSUIT BASED ON TWO GROUNDS NOT UPHELD ON PRESUMPTION THAT IT WAS DECIDED ON ONE GROUND.—In an action by a broker on a *quantum meruit* for his services, where a motion for a nonsuit, which was granted generally, was based on two grounds, one of which was that plaintiff, seeking to recover on a *quantum meruit*, could recover, if at all, only on an express contract, and no appeal was taken therefrom, the judgment cannot be affirmed on appeal on the assumption that the nonsuit was properly ordered on a ground from which there was no appeal, in view of the fact that it could not have been affirmed on that ground, since the complaint stated a cause of action broad enough to permit a recovery on *quantum meruit*.

8. PLEADING—QUESTION OF WHETHER COMPLAINT WAS BROAD ENOUGH FOR RECOVERY ON QUANTUM MERUIT WAIVED BY GOING TO TRIAL WITHOUT OBJECTION.—In an action by a broker against a property owner on *quantum meruit*, for services in selling property, a question of whether a complaint was broad enough to base a recovery on *quantum meruit* was waived by going to trial without objection.

Before MAULDIN, J., Aiken, April, 1921. Reversed and remanded.

Action by O. B. Hutson against T. C. Stone and George W. Croft, as Executor of the will of Dr. T. G. Croft, dec'd. From order of nonsuit plaintiff appeals.

*Mr. John F. Williams,* for appellant, cites: *When broker is entitled to commissions on sale of real estate*: 80 S. C. 346; 44 L. R. A. 336 note; 13 S. W. 419; 103 N. W. 1001; 88 S. W. 157; 49 Atl. 462; 80 S. W. 686; 93 Am. Dec. 176; 94 S. C. 409; 105 S. E. 735; 4 R. C. L. 322.

*Messrs. R. L. Gunter* and *J. B. Salley,* for repondents, cite: *Suit on contract and plaintiff cannot recover on quantum meruit*: 87 S. C. 85; 87 S. C. 257; 94 S. C. 406. *Broker must show his efforts were the procuring cause of sale*:

19 Cyc. 257; 80 S. C. 346; 94 S. C. 409; 7 A. L. R. 83. *Plaintiff had no exclusive agency:* 19 Cyc. 264; 89 S. C. 419. *Where property is listed with several agents first one making sale is entitled to commissions:* Ann. Cas. 1916B 977; 15 Ann. Cas. 765.

April 11, 1922.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The appeal is from judgment on order of nonsuit in action by plaintiff, to recover the sum of $1,000 as compensation for services as real estate broker, in negotiating a sale of the Olwell Hotel property in the city of Aiken.

One of the defendants, Dr. T. C. Stone, of Greenville, S. C., for himself and the other owners, listed this property for sale with three independent real estate brokers, namely, S. J. Brooks, Mrs. Eulalie Salley, and the plaintiff, O. B. Hutson. No exclusive agency was given either of the brokers, a fact of which plaintiff had full notice. The sale price fixed was $30,000 net to owners, with certain reservations as to furniture and fixtures, which will be hereafter more particularly referred to. The terms of the sale provided that compensation of the successful agent should be whatever amount might be secured for the property above the owners' net price of $30,000. On the morning of December 2, 1919, Mrs. Salley, one of the agents authorized to sell the property, wired Dr. Stone, at Greenville, that she had closed deal at $30,000. During the evening of the same day, about 8 or 9 o'clock, plaintiff closed trade with M. E. & B. F. Holley for a sale at $31,000, and wired Dr. Stone accordingly. (For purposes of discussion, the transactions of the two brokers referred to will hereinafter be called "sales.") Dr. Stone came to Aiken a few days afterwards, and, with full knowledge of plaintiff's claims, confirmed the sale made by Mrs. Salley to F. Summeral. The

Holleys, who had traded with plaintiff, then purchased Summeral's contract, and the property was subsequently conveyed by the owners to the Holleys for a consideration of $30,000. Summeral, to whom Mrs. Salley sold, had previously been approached and solicited by plaintiff, and had offered $30,000, which price plaintiff declined to accept. The case thus disclosed is that of a real estate broker, claiming compensation for services rendered in open competition with other agents equally authorized to negotiate a sale of the same property. Since the particular contentions of fact, upon which the appeal turns, will require a more detailed examination of the evidence, in the light of the principles of law applicable to the case, it is essential that these relevant principles should first be ascertained and stated.

A rule now well settled in this State is that a real estate broker is entitled to compensation, where the sale is effected during the continuance of the broker's agency, as the result of services on his part, which are the efficient or procuring cause of the sale, even though the actual agreement of sale is made by the owner, without the aid of the broker—"and the broker will be regarded the procuring cause, if his intervention is the foundation upon which the negotiation resulting in the sale is begun." *Goldsmith v. Coxe,* 80 S. C. 346, 61 S. E. 557; *Cleveland v. Butler,* 94 S. C. 409, 78 S. E. 81.

But it is apparent that the application of this rule of procuring cause, as between broker and principal, is not determinative of the question presented here. In the absence of controlling authority in this State, other principles relevant, which are deemed well grounded in reason and amply supported by authority elsewhere, will be set out. Thus, where a monopoly to sell is given, there is an implied understanding that the seller will not himself take advantage of the efforts of the agent to deprive him

of the fruits of his labor, and that no other is authorized or will be permitted to do so. *Vreeland & Vetterlein*, 33 N. J. Law, 247; see *Cofield v. Jenkins Motor Co.*, 89 S. C. 419, 71 S. E. 969. But where a number of agents are openly and avowedly employed, each of whom is aware that he is "subject to the arts and chances of competition," the implied agreement of noninterference extends to the acts of the seller only. *Vreeland v. Vetterlein,* supra; *Dalke v. Sivyer,* 56 Wash. 462, 105 Pac. 1031, 27 L. R. A. (N. S.) 195. Under these competitive conditions, the principle which controls the owner's liability for the broker's compensation is stated by the Arkansas Court, in *Murray v. Miller,* 112 Ark. 233, 166 S. W. 539, Ann. Cas. 1916B, 977, as follows:

"Good faith and strict neutrality on the part of the owner as between the rival agents seeking to make the sale is the test of the owner's liability. The authorities are practically unanimous on that proposition"—citing Gross on Real Estate Brokers, §§ 97, 98; Mechem on Agency, § 969; *Ward v. Fletcher,* 124 Mass. 224; *McGuire v. Carlson,* 61 Ill. App. 295; *Glenn v. Davidson,* 37 Md. 365; *Glascock v. Vanfleet,* 100 Tenn. 603, 46 S. W. 449; *Hennings v. Parsons,* 108 Va. 1, 61 S. E. 866, 15 Ann. Cas. 765; *Sibbald v. Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Vreeland v. Vetterlein,* 33 N. J. Law, 247; *Edwards v. Pike,* 49 Tex. Civ. App. 30, 107 S. W. 586.

See decisions collated in note to *Murray v. Miller,* Ann. Cas. 1916 B, 978.

Where an owner thus sets two or more agents to the task of finding a purchaser for his property, in an open contest of skill and energy, good faith demands and the law implies that he will comply with his contract to sell through the agent who first fulfils the terms of his employment, by producing the desired buyer. Hence, the well-established general rule that, where the same prop-

erty is placed for sale with two or more brokers, the owner, provided he remains neutral towards the several brokers, is liable for compensation or commissions only 'to the one who first completes a sale, or, if the owner has not delegated authority to complete the transaction to the one who first produces a customer able, ready, and willing to purchase the property, on terms agreeable to the owner. 4 R. C. L. 335. For collation of authorities, see notes to *Hennings v. Parsons,* 15 Ann. Cas. 765, to *Chaffee v. Widman,* 139 Am. St. Rep. 220, 251, and to *Murray v. Miller,* Ann. Cas. 1916B, 978.

Upon that general rule, however, there is a well recognized limitation that the law will not permit one broker, who has been entrusted with the sale of land and is conducting negotiations with a customer whom he has found, to be deprived of his compensation by the owner selling with knowledge of the facts to the same customer through another agent, for a price less than the first broker was empowered to accept, provided the first broker was, in fact, the procuring cause of the sale. 4 R. C. L. 320; Ann. Cas. 1913E, 788, note collating authorities; *Beaugher v. Clark,* 81 Kan. 250, 106 Pac. 39, 27 L. R. A. (N. S.) 198; *Grove Realty Co. v. Forrest & George Adair,* 26 Ga. App. 220, 105 S. E. 735. The so-called limiting principle just stated would seem to be clearly referable to the primary duty of the owner to exercise good faith in the maintenance of an attitude of impartial noninterference, and .is merely a legal conclusion that a sale, in the circumstances indicated, would amount to a breach of the principal's duty of neutrality toward the broker so deprived of his commissions.

The application of the foregoing principles to the facts of the case at bar is not free from difficulty. The plaintiff undertook to recover upon a *quantum meruit.* The issue joined, as stated by the Circuit Judge, was: "Did this man sell the

property, and what was the value of his services?" He did sell the property to the Holleys, under the terms authorized and under a contract that would have made for him a commission of $1,000. But when he made his sale, the property had already been sold, or a sale negotiated, through Mrs. Salley to Summeral, which sale, with knowledge of plaintiff's claims, was confirmed by Dr. Stone for defendants, and the property finally conveyed for a consideration of $30,000, under the Summeral purchase to the Holleys, as assignees of the Summeral contract.

We are of the opinion that the case turns upon whether the first and prior sale to Summeral by Mrs. Salley was procured as the result of any breach of the owner's duty toward the plaintiff, as a competing broker. When plaintiff undertook to sell defendants' property in open competition with other brokers, a clearly implied condition of his employment was that a prior sale by any one of the other agents, upon the owner's stipulated terms, would revoke his authority and terminate his agency. *Smith v. Fowler,* 57 Tex. Civ. App. 356, 360; 122 S. W. 598. He assumed the risk of losing the fruits of his labor by having a competitor reach the goal ahead of him. *Vreeland v. Vetterlein,* supra; *Dalke v. Sivyer,* supra; *Schusterman v. Kraus,* 148 App. Div. 727, 132 N. Y. Supp. 758. If, therefore, the Salley-Summeral sale was, in so far as plaintiff's rights were concerned, a valid sale, that is, involved no breach of legal obligation owed by defendants to plaintiff, clearly he would not be entitled to recover. It is not necessary to decide whether, under a different form of contract as to commissions, even conceding that the Summeral sale was valid from the owners' standpoint, plaintiff might have sustained a claim for compensation as the procuring cause of the sale by Mrs. Salley to Summeral as his customer. Here the terms of sale provided for no commission or compensation, unless the property was sold

for more than the owners' net price of $30,000. Mrs. Salley's sale to Summeral was for $30,000, and there is no evidence that the owners paid or became liable to pay anything by way of compensation on account of that sale. She had the same right that plaintiff had, to sell for the owners' net price and to forego commissions or compensation if she so pleased. If, therefore, the sale by Mrs. Salley was not the proximate result of any breach of the owners' duty, we do not think the evidence affords any basis for plaintiff's recovery, upon the theory that he was the procuring cause of that sale. On the other hand, if the Salley-Summeral sale was the proximate result of any breach of the owners' legal duty to plaintiff, it would not be a valid sale, as between plaintiff and defendants, and would not constitute such revocation of his authority as would preclude him from claiming compensation for services rendered in good faith, in negotiating the unconfirmed sale to the Holleys and as the procuring cause of the sale finally made through the Summeral contract to the Holleys.

The position of appellant is that the nonsuit was erroneously granted, in that there was evidence tending to establish a breach of the defendants' duty to maintain an attitude of strict neutrality toward the competing brokers, which breach of duty proximately caused the first or prior sale by Mrs. Salley to Summeral, and deprived plaintiff of the compensation earned by him in procuring the Holleys as purchasers. The contention in point of fact is that this duty of the owners was breached by granting better terms of sale to Mrs. Salley. The basis of the contention is the following evidentiary matter: The terms of sale, which Dr. Stone, for defendants, gave the plaintiff, were a purchase price of $30,000 net to the owners; the silverware in the hotel, the soda fountain valued at $2,500 in the store of Dr. Johnson, and certain furniture and fixtures in the front stores to be excepted from the sale. Plaintiff first solici-

ted Mr. F. Summeral, the person with whom Mrs. Salley's trade was closed. They did not agree upon terms. The next party solicited was B. F. Holley, who offered $27,000. Plaintiff advised Dr. Stone of this offer by letter. In reply he received a letter from Dr. Stone, dated November 29, 1919, stating:

"I will not consider less than the figures which I gave you while in Aiken last. * * * I will not hold this offer open indefinitely and am now trying to negotiate an exchange of this property for property in Greenville."

The receipt or memorandum of sale from Mrs. Eulalie Salley to Fabian Summeral, dated December 2, 1919, was as follows:

"Received of Mr. Fabian Summeral, ten dollars, on sale of Hotel Aiken property and furniture, except the last silverware purchased. The purchase price $30,000, and the balance to be paid on or before the first of January, 1920.

                    "Eulalie Salley, Agent."

On the back thereof was indorsed the following:

"For valuable consideration, I hereby transfer to M. E. and B. F. Holley all my right, title, and interest in and to the within paper.

                    Fabian Summeral."

Under date of January 3, 1920, the owners conveyed to M. E. and B. F. Holley, the consideration expressed in the deed being $30,000. The written memoranda of the transaction between the plaintiff and the Holleys consists of two receipts dated December 2, 1919, one acknowledging receipt of $10, and the other of $1,010, on purchase price of $31,000, for entire Olwell Hotel property. Both contained stipulations to the effect that the silverware of the hotel and the soda fountain in store, occupied by Dr. Johnson, were not included in sale. Plaintiff further testified that there was a verbal understanding with the Holleys, the day before that the other furniture and fixtures in the

front stores reserved by the owners' terms were not included in the Holleys' purchase.

Construing this evidence most strongly in favor of plaintiff's contention, as the established rule requires, we think the memorandum of Mrs. Salley's sale to Summeral—the only evidence in the case as to the terms of that sale—is sufficient to support the inference that Mrs. Salley's trade was made upon better terms than the owners had given the plaintiff. The Salley-Summeral receipt notes a sale of "property and furniture, except the last silverware purchased," which would impliedly embrace the remaining silverware and would carry the fixtures, including the $2,500 soda fountain—terms apparently equivalent to a proposal at least $2,500 better than plaintiff was authorized to offer. Summeral and the plaintiff, having been unable to agree, if Mrs. Salley's sale was made upon the terms indicated by her receipt, it is a reasonable inference that the sale was induced by better terms. The confirmation of the sale by Mrs. Salley to Summeral is clearly open to the construction that the owners thereby acknowledged Mrs. Salley's authority to sell upon the better terms. If Mrs. Salley was not authorized to sell upon the better terms indicated by her receipt, then the owners, in so far as the evidence goes, were under no obligation to confirm her sale to Summeral. If, nevertheless, they confirmed a sale which Mrs. Salley was not authorized to make, with full knowledge of the sale by plaintiff to the Holleys, upon the terms stipulated by the owners, then there would be a clear violation of their duty to comply with the conditions of plaintiff's employment and they could not escape liability for the value of his services, in negotiating the sale to the Holleys.

But, assuming that the ostensibly better terms upon which Mrs. Salley sold were authorized by Dr. Stone, prior to the sale to Summeral, the inquiry resolves

itself into this: Was the granting of the better terms to
Mrs. Salley a violation of the owners' duty of neutrality?
We are not prepared to hold that the granting of better
terms to one of competing brokers, for the purpose of clos-
ing a trade, would of itself constitute a breach of good
faith and of the owners' duty not to interfere as between
competing brokers. We think that, where an owner openly
empowers two or more brokers to sell or to find a purchaser
for the sale of real estate, upon certain stipulated terms,
he is not precluded from closing a trade through one of the
brokers, upon better terms that he originally offered, under
penalty of having to withstand lawsuits for commissions
claimed by other brokers, upon the ground that they were
in the midst of negotiations or had already consummated
sales. The open listing of the property with two or more
brokers is a mere offer of the owner to accept the terms
named, if a purchaser is found, and, in the absence of ex-
press stipulation or an obligation implied from special cir-
cumstances to the contrary, imposes no duty not to accept a
less price or different terms through one of the agents. See
*Dalke v. Sivyer, supra*. If a competing broker would pro-
tect himself in that regard, he has the right, either so to
stipulate, or to refuse to run the risk of losing his time
and labor. But, in the case at bar, from the plaintiff's
standpoint, we have the following special circumstances:
The plaintiff's notice to Dr. Stone, conveyed by his letter
submitting the B. F. Holley offer of $27,000 that plaintiff
was engaged in that negotiation; the written assurance con-
tained in Dr. Stone's letter of November 29th, four days
prior to the Salley-Summeral sale, that he would not con-
sider a less price than the figures already given plaintiff;
the granting to Mrs. Salley, plaintiffs' competitor, of better
terms; the sale by Mrs. Salley to Summeral, induced by the
better terms; the sale a few hours later by plaintiff to the
Holleys upon the terms stipulated in his contract of em-

ployment; and no evidence of the withdrawal of plaintiff's authority or termination of his agency except by virtue of the prior sale by Mrs. Salley.

We think the letter of Dr. Stone, to the effect that he would not consider less than the figures given the plaintiff, may fairly be construed as a stipulation not to extend better terms to plaintiff's competitors, and, under the conditions indicated, was sufficient to warrant the submission of the case to the jury, upon the theory that the granting of the better terms to Mrs. Salley was such breach of the defendant's duty to maintain in good faith a relation of strict impartiality toward the competing brokers, as proximately caused the first or prior sale and the loss on that account of plaintiff's compensation for services rendered. If the Salley-Summeral sale was in violation of plaintiff's rights, then, in so far as he was concerned, it was a nullity, and he would be entitled to claim that his sale to the Holleys was in fact the first sale, which should have been accepted and confirmed by the owners, and that the alleged sale to Summeral should not deprive him of compensation for services in procuring the Holleys as purchasers, willing and able to buy upon the owners' terms. See 4 R. C. L. 307; note, 43 L. R. A. 593; *Shillinglaw v. Sims,* 86 S. C. 79, 67 S. E. 906; *Fairly v. Wappoo Mills,* 44 S. C. 250, 22 S. E. 108, 29 L. R. A. 215.

The motion for nonsuit, which was granted generally, was based upon two grounds, one of which was that, under the evidence adduced, plaintiff, seeking to recover upon *quantum meruit,* could not recover upon that theory but could only recover, if at all, upon express contract. Respondents suggest that, because of the failure of appellant to impute error to the Circuit Judge in granting the nonsuit upon that ground, this Court should assume that the nonsuit was properly ordered, upon a ground from which there was no appeal,

and affirm the judgment. That position cannot be sustained. While the exceptions do not specifically assign error to the Judge, in basing the nonsuit upon the ground referred to, they challenge the correctness of the order of nonsuit as a whole, by alleging that there was evidence tending to prove certain facts which would have entitled plaintiff to recover upon *quantum meruit.* If entitled to have the cause of action for a recovery upon *quantum meruit* submitted to the jury, for any reason or upon any ground embraced within the exceptions, the nonsuit was erroneously granted. It is true that any ground upon which the nonsuit was granted, appearing upon the face of the record, is available to respondents to sustain the judgment below. But the nonsuit here could not have been correctly ordered upon the ground suggested. The rule, that an action founded upon an express contract does not admit of a recovery on a *quantum meruit,* is a rule of pleading based upon the principle that a plaintiff, who has pleaded upon one theory, should not be allowed to recover upon another. *Fitzsimmons v. Guanahani Co.,* 16 S. C. 192; *Birlant v. Cleckley,* 48 S. C. 306, 26 S. E. 600. Here the complaint states a cause of action sufficiently broad to permit of a recovery upon *quantum meruit.*

At the beginning of the trial it was expressly announced that plaintiff elected to recover upon *quantum meruit.* Even if he was not entitled to recover upon a *quantum meruit* under the complaint, the defendants waived the point by proceeding with the trial on that issue without objection. *Cleveland v. Butler,* 94 S. C. 406, 78 S. E. 81. See *Moore. v. Marion Cotton Oil Co.,* 100 S. C. 499, 85 S. E. 52.

For the reasons indicated, the judgment of the Circuit Court is reversed, and the cause remanded to that Court for a new trial.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN concur.

MR. JUSTICE FRASER (dissenting) : I do not see that the soda fountain was included in the sale. There is nothing to show that the soda fountain was a part of the hotel property.