## GOLDSMITH et al. v. BUCKEY.
### No. 5654.

Court of Appeals of the District of Columbia.

Argued Feb. 14, 1933.

Decided March 27, 1933.

Rehearing Denied April 7, 1933.

Alvin L. Newmyer, of Washington, D. C., for appellants.

Webster Ballinger, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment for the plaintiff (appellee here) in the Supreme Court of the District upon a verdict of a jury in an action to recover a real estate commission.

The evidence for the plaintiff was substantially as follows: Prior to September, 1927, premises No. 1316 Sixteenth Street, N. W., in the District, were owned by the Wardman Construction Company, and were leased through plaintiff, a real estate broker, to a Miss Gurnee for a period of two years at an annual rental of $6,000, tenancy to begin September 25, 1927. The lease contained a provision that the lessee might purchase the premises at any time during the term of the lease for the sum of $85,000, payable one-third in cash and the balance on or before three years. There was a clause in the lease authorizing the lessee to pay the monthly installment of rent at the office of plaintiff, and on the margin of the lease was a typewritten statement that a commission of 5 per cent. for rentals collected was to be paid to plaintiff as agent.

In November, 1927, the defendants purchased the premises from the Wardman Company, and the Gurnee lease was assigned to them. On December 7th, following, defendants notified plaintiff by letter that they had purchased the premises and that rent should thereafter be remitted to them. On the next day plaintiff delivered a check for rent to defendants, and Goldsmith, for defendants' firm, said to plaintiff: "You procured the lease of this property with its option to purchase. We wish you would take this matter up with your client and see if you cannot induce her to exercise her option. If she will do so we will reduce the price to $75,000. If a sale is made by you we will pay you the usual commission." Shortly thereafter (i. e., shortly after December 8th) plaintiff took up the matter with Miss Gurnee and then telephoned Goldsmith that she was interested in the property at the reduced price, but that she would not be able to give a definite answer until she had had an opportunity to test the heating plant of the house and determine whether the house was comfortable in severe cold weather. He requested certain data from Goldsmith, but not receiving it, he sent a letter on December 27th to defendants' firm requesting "that the terms, taxes, trusts, and price be confirmed to me by letter as the

prospective client is interested and requests this accurate data."

To this letter he received no reply. He did not communicate further with defendants. Asked when he next talked with Miss Gurnee, he answered: "I can't state exactly but I had several conversations with her." He "could not state when the talks occurred; that later in the winter, and after there had been a severe cold spell, he endeavored to get in touch with Miss Gurnee several times but was informed each time that she was out of the city; that the next he heard of the matter was the receipt of a letter dated March 28, 1928, signed by Miss Gurnee and addressed to him, the body of which was as follows: 'In case you should not have heard, this is to inform you I have bought this house —so I am not defaulting on the rent. Thanking you for all your kindness and courtesy during your renting period, believe me,' " etc. Upon investigation plaintiff discovered that the defendant had accepted a contract submitted through the Wardman Company, as agent, for the sale of the property to Miss Gurnee at a reduced price of $64,500; that the sale was consummated about March 16, 1928. The contract for the sale of the property to Miss Gurnee provided for the payment to the Wardman Company of a commission. The settlement sheet of the title company through which the sale was consummated showed the payment of a commission to "Wardman and Elmer Dyer" of $2,035, the usual commission.

Plaintiff rested his case; whereupon defendants moved for a directed verdict, which was overruled.

Defendants then introduced evidence to the following effect: After purchasing the property they listed it for sale with about a dozen real estate agents, including the Wardman Company. That Mr. Dyer of that company brought them a contract signed by Miss Gurnee, in which she agreed to purchase the property for $64,500, which was less than the quoted price, but which they finally accepted. The regular real estate commission was paid to the Wardman Company; that they did not know Buckey in connection with the sale.

Dyer testified that he had known Miss Gurnee when she resided at the Wardman Park Hotel while he was its manager; that immediately upon the purchase of the property from the Wardman Company by defendants, he informed them that he thought he could sell the property to Miss Gurnee at the option price; they authorized him to sell the property. That after seeing Miss Gurnee about a dozen times he finally persuaded her to make a written offer, which she did in the contract of February 28, 1928.' The regular commission was paid by defendants; "that he never saw Buckey in connection with the deal and that Miss Gurnee had told him she was not interested in buying the property at the price named in the option, or at $75,000. * * *' He had no knowledge while he was endeavoring to induce Miss Gurnee to purchase that Buckey was endeavoring to sell it to her."

Defendants then rested, and again moved for a directed verdict, which motion was overruled.

Plaintiff was one of several agents operating on an equal basis. In such circumstances a purchaser may be negotiating with different authorized agents of the owner and, if so, the agent is entitled to the commission who first brings to the owner a contract satisfactory to him and which the owner accepts, provided there has been no bad faith. Daniel v. Columbia Heights Land Co., 9 App. D. C. 483; Evans v. Shinn, 40 App. D. C. 557; Taylor v. Maddux, Marshall & Co., 55 App. D. C. 254, 4 F.(2d) 447.

Shortly after defendants purchased the premises on December 8, 1927, plaintiff "had several conversations" with Miss Gurnee, "who was interested in the property at the reduced price" ($75,000). Plaintiff's efforts thereafter were confined to an endeavor "to get in touch with Miss Gurnee * * *, but was informed each time that she was out of the city." Meanwhile the Wardman Company, through Dyer, on February 28, 1928, more than two months later, obtained from Miss Gurnee an offer to purchase the premises, which offer was accepted by defendants, and the regular commission paid the agent.

There is not the slightest evidence of bad faith on the part of defendants. The burden of proof was on the plaintiff, and yet he did not produce Miss Gurnee as a witness nor account for his failure to do so. As was said in Taylor v. Maddux, Marshall & Co., 55 App. D. C. 254, 4 F.(2d) 447, 448: "Taking the plaintiff's case in its most favorable light, it amounted merely to a competition between two agents for the sale of the premises. * * * It is a case where the first one of two agents presenting a contract satisfactory to the owner is entitled to the commission, and the other agent, regardless of what service may have been rendered, is without remedy."

Reversed, with costs.

Reversed.