## RIEFFER v. HOLLINGSWORTH.
### No. 484.

Municipal Court of Appeals for the District of Columbia.
April 25, 1947.

Leroy A. Brill, of Washington, D. C., (Mark P. Friedlander, of Washington, D. C., on the brief), for appellant.

Charles J. King, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff, a licensed "business chance" and real estate broker, sued defendant for a commission claimed to be due on the sale of a rooming house business. The trial court, sitting without a jury, ordered judgment for defendant at the close of plaintiff's case. Plaintiff appeals.

Defendant, Mrs. Hollingsworth, owned the business, including a lease on the premises involved, the furniture and the good will of the venture. Desiring to dispose of this business, she gave to plaintiff a 90-day, non-exclusive written listing to sell at a fixed price and specified terms. One of plaintiff's salesmen interested a Mr. James A. Creel and showed him the property. This was the first contact Mr. Creel had with the business. Mr. Creel thereupon made a written offer which differed in several important respects from the terms fixed in the listing, although the price —$12,000—was the same.

Following some preliminary negotiations, there was a conference between defendant, her attorney, plaintiff, one of plaintiff's salesmen, and Mr. Creel. During this conference defendant and her attorney objected to several of the provisions of Mr. Creel's offer, including one inserted by plaintiff's attorney to the effect that if the transaction was closed at such attorney's office the parties would share in paying him a fee. As to most of these differences, the testimony indicated the parties could have reached an agreement but they did not actually do so. An important difference between the parties was that defendant insisted upon transferring the personal property by a conditional bill of sale instead of selling outright and taking back a chattel deed of trust as offered by Mr. Creel. Mr. Creel was adamant on this point, saying he might want to resell the property and that a conditional sale contract would complicate such a transaction. At the end of this conference Mr. Creel's signature on his offer was stricken at his direction and a check for $1,000 which Mr. Creel had in his pocket was not delivered. Plaintiff's salesman, who had handled the matter, was asked if he had attempted to get in touch with defendant after this conference. He first answered that he "saw it would be of no avail to talk" to her but then added he believed he had called her up a few days later to ask if the business had been sold and she said "there was something pending but nothing definite." He also testified he had talked subsequently to Mr. Creel's attorney but, on objection, he was not permitted to recite this conversation. Asked whether he had abandoned the attempt to sell the business after the conference recited above, he replied: "No. I did not."

Two or three days after the rejection of Mr. Creel's offer by defendant, when plaintiff's authority to sell still had several weeks to run, she gave to another licensed broker a written, non-exclusive, 30-day listing of the business. On this listing the price was set at $2,000 less than on the listing with plaintiff and the down payment was reduced by $2,500. Plaintiff was never informed of the better terms offered through the second broker. Shortly thereafter, according to Mr. Creel, he went to the office of the second broker to talk about some advertisements this broker had in the newspapers regarding other properties and during the ensuing conversation defendant's business was mentioned. Mr. Creel remembered the property as the one shown him by plaintiff's salesman, so informed the second broker, and made an offer through the latter. Negotiations ensued with defendant's attorney on defendant's authority, a contract was drawn up, and as a result the business was sold to Mr. Creel and his mother by defendant through the second broker. According to defendant, she learned personally that Mr. Creel was the buyer when his signed offer was presented to her for signing and she recognized his name. The price paid was $2,500 less than the original listing with plaintiff, the cash payment was less than one-half of that called for on the original listing, and the balance was secured by a chattel deed of trust on all the furnishings as insisted on from the beginning by Mr. Creel, but refused by defendant in the negotiations through plaintiff. The second broker has received his 10% commission on the sale.

Defendant, appellee here, takes the position that plaintiff, although first introducing the ultimate buyer, Mr. Creel, did not conclude a contract upon the terms specified by defendant, that under the circumstances defendant had every right to consider that plaintiff had abandoned her efforts to sell the business to Mr. Creel, and that where the sale of property is entrusted to two or more competing brokers on a non-exclusive basis the broker who concludes a contract between the buyer and seller is entitled to the commission. Plaintiff urges that she was the procuring cause of the sale, that defendant by quoting a lower price and better terms to the second broker did not remain neutral between them, that therefore plaintiff was entitled to her commission, and that in any event the trial court erred in giving judgment at the conclusion of plaintiff's case.

In the absence of a provision in the brokerage contract to the contrary, it is fundamental that where property is listed with several agents a purchaser may be negotiating with different agents of the owner, and if so, that agent is entitled to the commission who first produces a contract satisfactory to and accepted by the owner, provided the owner has remained neutral and has not colluded with the successful agent to defeat another agent who has been negotiating with the same purchaser.[1] That broker is the procuring cause of a sale who finds a purchaser, ready, willing and able to buy upon the terms authorized by the seller,[2] or who produces an offer satisfactory to the vendor, provided there has been no bad faith towards another broker.[3] Whether a broker was the procuring cause of a sale is ordinarily a question for the trier of the facts. Good faith and strict neutrality on the part of the owner as between rival agents seeking to make the sale is the test of the owner's liability.[4] Thus it has been held that the giving of better terms to one of two brokers competing for the same purchaser constitutes a lack of neutrality which may entitle the unsuccessful broker to a commission,[5] although this is not the rule where the negotiations induced by the first broker have proved unproductive and are broken off in good faith, even though a subsequent renewal of negotiations results in a sale to the same purchaser at a lower price.[6] In the last-described situation the first broker is not the procuring cause of the sale.

In view of the above principles, we believe that plaintiff presented a prima facie case and hence that the trial court erred in dismissing her suit at the conclusion of her evidence. The same rules are applicable here as apply to a motion for a directed verdict for defendant at the close of plaintiff's case, and we must accept as true plaintiff's evidence and all reasonable inferences therefrom. The test is whether there was any evidence which would have supported a judgment for plaintiff. We believe there was.

[1] Goldsmith et al. v. Buckey, 62 App. D.C. 61, 64 F.2d 559; Taylor v. Maddux, Marshall & Co., 55 App.D.C. 254, 4 F.2d 447; Addison v. Blair, 42 App. D.C. 331; Evans v. Shinn, 40 App.D.C. 557; Daniel v. Columbia Heights Land Co., 9 App.D.C. 483; Davidson v. Jones, D.C.Mun.App., 34 A.2d 261.

[2] Battle v. Price, 63 App.D.C. 326, 72 F.2d 377; Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599.

[3] Goldsmith et al. v. Buckey, supra; Taylor v. Maddux, Marshall & Co., supra.

[4] Murray v. Miller, 112 Ark. 227, 166 S.W. 536, 539, Ann.Cas.1916B, 974, and authorities therein cited.

[5] Fink v. Williamson, 62 Ariz. 379, 158 P.2d 159; Manuel v. Carnall, 202 Ark. 120, 149 S.W.2d 44; Applegate v. Danciger, Mo.App., 2 S.W.2d 635; Hutson v. Stone, 119 S.C. 259, 112 S.E. 39; 4 R.C.L., "Brokers," § 57.

[6] Bridgeport Land & Title Co. v. Langdon, 101 Conn. 553, 126 A. 683; Kellogg v. Rhodes, 231 Iowa 1340, 4 N.W.2d 412; Jones v. Buck, Iowa, 120 N.W. 112, affirmed 147 Iowa 494, 126 N.W. 452; Delancy v. Russell, 267 Mass. 171, 166 N.E. 623; 8 Am.Jur., Brokers, §§ 144, 190; 12 C.J.S., Brokers, §§ 65, 93a; 4 R.C.L., "Brokers," § 58; 43 A.L.R. 1116; cf. Armes v. Cameron, 8 Mackey 435, 448, 19 D.C. 435, 448; Fisher v. Hanson, 99 Conn. 703, 122 A. 906; Jennings v. Trummer, 52 Or. 149, 96 P. 874, 23 L.R.A.,N.S., 164, 132 Am.St.Rep. 680.

The decisive point is whether the efforts of plaintiff to bring defendant and the ultimate buyer together on satisfactory terms were completely broken off before the second broker was given the listing on more advantageous terms. While the evidence tended to support the view that the negotiations through the first broker were ended, yet there was some evidence to the contrary. Plaintiff's salesman testified that he not only called up defendant about the property a few days after the abortive conference but also communicated with the attorney for the ultimate buyer. The same salesman testified that he had not abandoned his efforts to sell the property. Under the circumstances, such efforts must be viewed in the light most favorable to plaintiff and viewed in this light the inference could fairly be drawn that plaintiff's salesman was still working on the proposition.

In many negotiations for the sale of property impasses are artificially raised by both vendee and vendor in order to obtain better terms. It is for this reason, among others, in order to protect the broker first interesting a prospective purchaser from losing a commission, that a breaking off of negotiations is required before the seller is permitted to deal with the same prospect through another agent by offering more advantageous terms.

Here defendant sold to plaintiff's original customer upon the basis of a chattel mortgage, the very condition refused in the negotiations through plaintiff, and also sold upon new terms far more favorable than any offered through plaintiff, including a reduction in the total price of $2,500. While $500 of this reduced price might be considered as resulting from negotiations with the successful broker, the remaining $2,000 reduction was made in the listing with the second broker without a similar advantage to plaintiff. Under such circumstances, we believe the evidence permitted, although it did not compel, a finding that plaintiff was the procuring cause of the sale.

We deem it appropriate to remind the trial court that in close cases, such as the present one, it is far preferable to hear all of the evidence before making a final decision. But we emphasize that we are not to be understood as meaning that the judgment should have been for plaintiff. That question must be left for future determination.

Reversed, with instructions to award a new trial.