**WEBSTER v. PERPER et al.**

**Nos. 1075, 1076.**

Municipal Court of Appeals for the
District of Columbia.

Argued Aug. 13, 1951.

Decided Sept. 20, 1951.

John L. Hamilton, Washington, D. C.,
with whom Hamilton & Hamilton, Wash-
ington, D. C., were on the brief, for ap-
pellant.

H. Max Ammerman, Washington, D. C.,
with whom Seymour Friedman, Washing-
ton, D. C., was on the brief, for appellees.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Appellee Perper built a number of new
houses in the area of 48th and Yuma
Streets, N. W., for sale to the public
through appellee Kenbar Company, Inc.,
of which Perper was president. This ac-
tion was brought by appellant Webster, a

real estate broker, for commissions on the sale of two of those houses. A jury returned a verdict in favor of appellant, but on motion of appellees the trial court set aside the verdict and entered judgment for appellees. The trial court based its action on the ground that there was no substantial evidence from which the jury could have found that appellant's efforts were the procuring causes of the sales. This appeal questions the correctness of that ruling and requires a review of the evidence.

Appellant testified that Perper gave him written, but not exclusive, authorization to sell seven of the houses and that he sold five of them and was paid commissions on those sales; that he advertised the houses in daily newspapers, placed his signs on each of the houses, kept them open for inspection on weekdays from 4:00 p. m. until dark and on Saturday and Sunday afternoons; and that he had the houses illuminated by floodlights at night.

With respect to the two houses in question, appellant testified that the 48th Street house was listed with him for sale at $27,500 and the Yuma Street house at $23,950 and that he obtained offers to buy them at smaller amounts but was told by Perper that nothing less than the authorized amounts would be accepted.

Jones, a salesman for appellant, testified that he was at the 48th Street house on a Sunday in the first part of October when one Speisman, with his wife and an older man, came to the house and he showed Speisman through each room of the house; that Speisman asked the price and was told it was $27,500; that Speisman also asked the name of the builder and was told that it was Perper who lived next door; that on the following Sunday Speisman, his wife and baby, came to the house and Speisman was again taken through the house by Jones and was also shown the boundary lines of the lot; that they discussed the price and financing of the house and Speisman gave his name and telephone number and then went next door to Perper's house; that the next day he tried unsuccessfully to reach Speisman by tele-

phone and a few days later learned that the house had been sold. The contract of sale between Speisman and Kenbar Company, Inc., was dated October 20, showed a price of $24,000 and indicated that no commission was paid to any broker.

Appellant testified that on a Sunday early in November he was personally exhibiting the Yuma Street house when a Mr. Rosen, accompanied by his wife and a Mr. Speisman, came to the house; that he obtained Rosen's name from Speisman and his telephone number from Rosen himself; that he showed Rosen through each room of the house and told him the sale price was $23,950; and that Rosen said the price was too high and appellant told Rosen that the builder was Perper who lived next door; that Rosen left and appellant did not see him again although he tried to telephone him the next day; and that he later learned Rosen had bought the house. The contract of sale between Rosen and Kenbar Company was dated November 8, showed a sale price of $20,500 and indicated that no commission was paid to any broker.

On behalf of appellees, Speisman testified that his father-in-law, one Gildenhorn, had gone to see Perper about a personal matter and later reported to Speisman that Perper had a house for sale and suggested he go see it; that he went to the 48th Street house on a Sunday morning and went through it; that he saw a young man, later identified as Jones, on the porch and gave him his name but had no further conversation with him; that his father-in-law negotiated with Perper and arranged for the purchase, furnishing the down payment of $10,000. He further testified that after moving into the house he suggested to Rosen, his friend, that he buy the Yuma Street house.

Rosen testified that his friend Speisman suggested he buy the Yuma Street house and he, his wife and his father-in-law went and looked at the house; that he did not recall seeing appellant at the house but a young man was there who got his name from Speisman; that after seeing

the house he went to see Perper and eventually bought the house.

The trial court ruled that while an inference could have been drawn that the attention of the purchasers was first called to the property by the advertisements or signs of the broker, that such inference was eliminated "when clear, positive, and uncontradicted testimony was given by each of the ultimate purchasers as to the true source of their interest in the houses." Appellees say no such inference could have been drawn, that the evidence showed clearly that the broker was not the procuring cause because the only evidence of procuring cause showed that Gildenhorn learned of the houses when making a personal call upon Perper, that Gildenhorn interested Speisman in one house and Speisman in turn interested Rosen in the other house, and that this was established by clear, uncontradicted and unrebutted evidence, not inherently improbable.

We think the reasoning of both the trial court and of appellees is faulty. It is true that the testimony of Speisman and Rosen of how they first became interested in the properties was not directly contradicted, but in our opinion the jury was not compelled to accept their testimony. Speisman admitted going to the 48th Street house when the broker's salesman was there, but he denied seeing the broker's sign, denied that the salesman showed him through the house or discussed the price with him, or pointed out the lot lines, or told him that Perper was the builder, and denied he made a second visit to the house. The jury could find that these denials were false, deliberately or otherwise, and for that reason give little or no credence to his testimony on other matters. Likewise Rosen denied seeing the broker's sign, denied that the broker took him through the Yuma Street house, and denied telling the broker the price was too high and being told that Perper was the builder. The jury could accept the broker's testimony on these points as true, and find the witness's denial to be untrue and discount his testimony on other features of the case.

Although the jury was not compelled to accept appellees' version of the procuring causes of the sales, the question remains whether the broker's evidence, if fully accepted, was sufficient to support a verdict that the efforts of the broker were the procuring causes of the sales. We have ruled that: "Whether a broker was the procuring cause of sale is ordinarily a question for the trier of the facts." Rieffer v. Hollingsworth, D.C.Mun.App., 52 A.2d 632, 634. This is in accord with general authority. See 8 Am.Jur., Brokers, § 172; 12 C.J.S., Brokers, § 118(c). Even if we assume that the attention of the purchasers was first directed to the properties by others than the broker, this is not conclusive that the efforts of the broker were not the procuring causes of the sales. Battle v. Price, 63 App.D.C. 326, 72 F.2d 377; Hecht Co. v. Whiteford, 78 U.S.App. D.C. 134, 137 F.2d 929, certiorari denied, 320 U.S. 795, 64 S.Ct. 264, 88 L.Ed. 479. It cannot be ruled as a matter of law that the fact that the broker had the houses open for inspection, showed the prospective purchasers through the houses, informed them of the prices asked by the owner and directed them to the owner, under the circumstances of this case could not have constituted the procuring causes of the sales. And, of course, the fact that the owner closed directly with the purchasers at lower prices than those listed with the broker does not bar the broker's claim to commissions. We think the case was one for the jury and its verdict must stand.

Appellees have cross-assigned two errors. The first relates to the denial of a requested instruction. The instruction was denied prior to the giving of the charge to the jury. The charge as given fully covered the issues in the cases. When the charge was complete the court called counsel to the bench and inquired if there were any objections or exceptions. Appellees' counsel replied: "Very fine charge." By failing to renew the objection to the denial of the requested instruction, particularly in view of the indication that the charge

as given was satisfactory to appellees, we think the error, if any, in denial of the instruction was waived. Municipal Court rule 47, identical with Fed.Rule Civ.Proc. 51, 28 U.S.C.A. See Villaroman v. United States, 87 U.S.App.D.C. 240, 184 F.2d 261, and cf. Montgomery v. Virginia Stage Lines, Inc., D.C.Cir.1951, 191 F.2d 770. Furthermore, we think the instruction was properly denied.

The second error claimed by appellees relates to the denial of a continuance requested on the day of trial by appellees on the ground of the absence of Gildenhorn, a witness who was then out of town. The case had been set for trial on January 16 but was continued and on January 25 counsel were notified that the case was set for trial on March 5. The granting or denial of a continuance is within the sound discretion of the trial court. In view of the long notice to counsel of trial date and the failure to request a continuance until date of trial, there is no showing of an abuse of discretion in denying the continuance. Furthermore, although Gildenhorn was not present at trial, appellees' other witnesses were permitted to testify concerning what Gildenhorn had said and done in connection with the matters in issue.

The judgment is reversed with instructions to reinstate the verdict and enter judgment in accordance therewith.