Gilbert I. ZELLAN, Lilyan Goda, Thelma Z. Lenkin, Trustees of the Estate of Jacob L. Zellan, Deceased, Appellants,

v.

Emanuel WINSTON and Dorothy K. Winston, trading as Dorothy K. Winston & Co., Appellees.

No. 1535.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 20, 1954.

Decided Oct. 8, 1954.

Myer Koonin, Washington, D. C., for appellants.

H. Max Ammerman, Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

This is an appeal from a judgment ordering the sellers of real estate to pay a commission of $2,000 to a broker who was found to have procured the purchaser. The parties to the transaction were the appellants, trustees of the Zellan estate,[1] whom we shall call seller; appellees, Winston and Company, real estate brokers; a man named David, who was the actual purchaser; and a man named Rosenberg, who was a straw purchaser.

Broker showed the property to David and obtained from him a written offer to buy it for $40,000. Seller refused this offer. After some negotiation, seller also refused an offer of $45,000 conveyed to him by plaintiff broker. In a matter of a very few days David sent a straw party named Rosenberg, a relative of his, to deal directly with seller. It developed that the straw man made an offer through another broker, Madeoy, and such offer was then accepted; and though no written sales contract was ever made, the transaction proceeded to final sale and settlement. However, the sale was not to Rosenberg the straw, but to David, who had been brought into the picture by plaintiff broker. Before settlement of the sale there was a meeting at the house for the purpose of taking inventory of personal property. In addition to

1. Gilbert Zellan, one of the trustees and himself a real estate broker, was the principal actor in the transaction and the only one of the trustees who testified at the trial.

the straw man, Rosenberg, David was also present at that meeting. David testified without contradiction that he then and there expressly revealed himself to the seller, Zellan, as the real purchaser of the property. This was repeated a few days later when the parties met at a title company for settlement of the sale. The deed was made to David, and the purchase price was $40,000, the same price which had earlier been tendered through plaintiff broker. (Though the price stated in the settlement figure was $42,000, it was explained at the trial that $2,000 was deducted from that figure as a credit to the buyer, and there is no question that the net to Zellan was $40,000. It was admitted that neither $2,000 nor any other amount was paid to the broker Madeoy, with whom the straw party had allegedly had some dealings.)

The question is whether on the basis of the evidence just stated, which was in the main uncontradicted, the trial court was right in awarding judgment to plaintiff broker.

The views of the trial court are reflected in a memorandum opinion overruling defendant's motion for a new trial, after summarizing the basic facts as to the activity of plaintiff broker in introducing the purchaser to the property and interesting him in it, and the negotiations which followed. The memorandum referred to the episode at the house when inventory was being taken and recited: "At that time Mr. David revealed himself to Mr. Zellan as the true purchaser of the property. Thereafter, nothing was done on the part of Mr. Zellan to apprise the plaintiffs of the fact that Mr. David was the true purchaser of the property." The judge's memorandum also stated that though the title company settlement sheet showed a $2,000 deposit, Mr. Zellan himself testified that that money did not go to any broker but was credited to the purchaser and the judge found that "the net result of the transaction was that Mr. Zellan ultimately accepted the David offer of $40,000."

The judge ruled that plaintiff Winston was the procuring cause of the sale.

■ Challenging that ruling, appellants insist that the property was sold to the straw man, Rosenberg, and that because the broker, Winston, had not produced him as a purchaser, Winston was not entitled to a commission. Their brief says that Rosenberg ultimately "assigned his interest in the contract" to David. In the first place, it is clear beyond question that Rosenberg was not the purchaser and he did not "assign" anything to David, for all the evidence is that Rosenberg was brought into the transaction as a wholly fictitious party. It is also clear, and completely uncontradicted, that Zellan knew this several days before closing the sale and, of course, knew that the deed was being made not to Rosenberg but to David, who was Winston's client. Even if the evidence were not so one-sided, we would still have to hold that whether Winston was the procuring cause of the sale was a question of fact. Webster v. Perper, D.C.Mun.App., 83 A.2d 433,[2] and cases there cited.

■ This is not a case of competing brokers, with one failing and the other succeeding in closing a sale. Rather it is a case of a broker producing a purchaser at a stated price and that purchaser buying the property at that price after briefly injecting into the picture a sham purchaser, who was known to the seller to be a sham. Also it is a case of an owner selling directly to his broker's client, paying no commission. In such circumstances, the law says the broker is not to be denied his compensation. Hecht Co. v. Whiteford, 78 U.S.App.D.C. 134, 137 F.2d 929, certiorari denied 320 U.S. 795, 64 S.Ct. 264, 88 L.Ed. 479, rehearing denied 320 U.S. 816, 64 S.Ct. 436, 88 L.Ed. 493; 12 C.J.S., Brokers, § 93. Indeed it has been held that even if an owner does not know of the broker's activity in stimulating the sale, the commission is earned if the prospect produced by the broker goes

2. Appeal Denied by United States Court of Appeals for the District of Columbia Circuit December 17, 1951, Nos. 11,218 and 11,219.

through with the sale. Bryan v. Abert, 3 App.D.C. 180; Colonial Trust Co. v. Pacific Packing & Navigation Co., 3 Cir., 158 F. 277.

▮ Another argument advanced by appellants is that Winston had only an "oral listing" from another broker named Sperling, and that Sperling had only a "cooperative listing" from one of the trustee-owners, Gilbert Zellan who was himself a broker. The argument seems to be that this circumstance would require the plaintiff to share the commission with Mr. Zellan. We note that Sperling emphatically denied that he accepted a cooperative listing from Zellan and insisted that the listing he obtained was a general one. This was enough to support the finding that there was no cooperative listing. And Sperling's interest having been assigned to Winston, the right of Winston to full recovery is plain.

Affirmed.